## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

BENJAMIN COLE,                          )
                                        )
               Petitioner,          )
                                        )
v.                                      )      **Case No. 08-CV-0328-CVE-PJC**
                                        )
RANDALL WORKMAN, Warden,                )
Oklahoma State Penitentiary             )
                                        )
               Respondent.          )

## OPINION AND ORDER

This matter comes before the Court on a Petition for Writ of Habeas Corpus (Dkt. # 16) filed by Oklahoma death row inmate, Benjamin Cole, pursuant to 28 U.S.C. § 2254. Cole, who appears through counsel, challenges his conviction and sentence in Rogers County District Court Case No. CF-02-597. Respondent filed a response (Dkt. # 23) to the petition, and Cole filed a reply (Dkt. # 28) to the response. The state court record has been produced.[1] See Dkt. # 30. The Court considered all of these materials in reaching its decision. For the reasons discussed below, the Court concludes the petition should be denied.

## BACKGROUND

### I.    Factual Background

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed correct unless rebutted by clear and convincing evidence. In considering the issues presented in the

---

[1] References to documents and pleadings from these proceedings shall be referred to by docket number, where feasible (Dkt. # __); references to the trial transcript shall be referred to as "Tr. Vol. __ at ___"; references to other hearings held by the trial court shall be referred to as "Tr. [Date] at __." The original state court record shall be identified as "O.R. Vol. _ at __."

petition, the Court relied upon the following synopsis from the Oklahoma Court of Criminal Appeals (OCCA) in that court's opinion on direct appeal. Following review of the record, trial transcripts, trial exhibits, and other materials submitted by the parties, the Court finds this summary by the OCCA is adequate and accurate. Therefore, the Court adopts the following summary as its own:[2]

> Appellant's nine-month-old daughter, Brianna Cole, was murdered on December 20, 2002. According to the State Medical Examiner, Brianna's spine had been snapped in half, and her aorta had been completely torn through due to non-accidental stretching. The official cause of death was described as a fracture of the spine with aortic laceration.

> Appellant eventually admitted causing the fatal injuries. In a statement he gave to police, Appellant said he'd been trying, unsuccessfully, to get the child, who was lying on her stomach, to stop crying. Appellant eventually grabbed his daughter by the ankles and pushed her legs toward her head until she flipped over. This action broke the child's back and resulted in fatal injuries.

> Evidence was admitted that Appellant took no remedial action just after this incident happened. He went and played video games, denied anything was wrong with the child when confronted by his wife, and said nothing to rescue or medical personnel about what had happened. (He did, however, attempt CPR when the situation turned grave, before the ambulance arrived.) Only after rescue efforts had failed and an autopsy was performed did the medical personnel learn that Brianna's spine had been snapped. The autopsy physician testified that the injury required a great amount of force and would not be the result of normal back-bending by a nine month old. The death was eventually ruled a homicide. When told of this fact by the authorities, Appellant asked, "How many years am I looking at?" At this point, Appellant confessed his responsibility for the injuries.

Cole v. State, 164 P.3d 1089, 1092-93 (Okla. Crim. App. 2007).

## II. Procedural History

Cole challenges his conviction and sentencing in Rogers County District Court Case, No. CF-02-597. He was tried by jury and convicted of first degree child abuse murder pursuant to Okla.

---

[2] Additional facts, apparent from the record, may be presented throughout this opinion as they become pertinent to the Court's analysis.

Stat. tit. 21, § 701.7(C). The jury found the existence of two aggravating circumstances: (1) that Cole had been previously convicted of a felony involving the use or threat of violence to the person; and (2) that the murder was especially heinous, atrocious, or cruel. See Cole, 164 P.3d at 1092. The jury recommended a death sentence. In accordance with the jury's recommendation, the Honorable J. Dwayne Steidley sentenced Cole to death.

On direct appeal, Cole raised the following thirteen propositions of error:

Proposition I: The introduction into evidence of Cole's prior criminal conviction and prison sentence for aggravated child abuse in California during first stage proceedings, through multiple witnesses, resulted in overwhelmingly unfair prejudice in violation of Cole's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, Section 7 of the Oklahoma Constitution.

Proposition II: The trial court's denial of Cole's motion for a continuance of the trial in order to prepare and acquire critical mitigation evidence violated Cole's constitutional rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, Section 7 of the Oklahoma Constitution.

Proposition III: The trial court's admission of gruesome autopsy photographs at trial deprived Cole of his constitutional right to a fundamentally fair jury trial pursuant to the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, Sections 7 and 9 of the Oklahoma Constitution.

Proposition IV: The trial court denied Cole the right to effective assistance of counsel when Cole developed a conflict with trial counsel and requested to have them replaced and the trial court refused and forced Cole to trial in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, Sections 7 and 20 of the Oklahoma Constitution.

Proposition V: Prosecutorial misconduct in seeking sympathy for the decedent violated Cole's right to a fundamentally fair trial and sentencing proceeding in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, Sections 7 and 20 of the Oklahoma Constitution.

Proposition VI:    The jury in this case was given an erroneous instruction regarding the "heinous, atrocious, or cruel" aggravating circumstance which rendered Cole's sentencing proceeding constitutionally invalid; the evidence was insufficient to support this aggravating circumstance; and the aggravating circumstance is unconstitutionally vague and overbroad as it is being applied currently in Oklahoma in violation of Cole's rights pursuant to the Eighth and Fourteenth Amendments to the United States Constitution and Article II, Section 7 of the Oklahoma Constitution.

Proposition VII:    The status of Oklahoma's crime of child abuse murder as one of general intent fails to provide a constitutionally adequate culpability requirement that must result in vacatur of the death sentence in this case as having been imposed in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article II, Sections 7 and 9 of the Oklahoma Constitution.

Proposition VIII:    The introduction of the details of Cole's prior conviction from California during first stage proceedings prejudiced Cole during penalty phase proceedings and resulted in a death sentence obtained in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article II, Sections 7 and 9 of the Oklahoma Constitution.

Proposition IX:    The introduction into evidence of a full-color photograph of the minor decedent depicting her in life (in a staged portrait setting) during penalty phase proceedings violated Cole's constitutional rights under the Eighth and Fourteenth Amendment to the United States Constitution, and his right to be free from the effect of ex post facto laws.

Proposition X:    Second stage jury instructions deprived Cole of a fundamentally fair sentencing proceeding in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article II, Sections 7 and 9 of the Oklahoma Constitution.

Proposition XI:    Cole was denied his constitutional right to jury trial by the failure of the trial court to instruct the jury that it must find that the aggravating circumstances outweighed the mitigating evidence beyond a reasonable doubt in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

| | |
|---|---|
| Proposition XII: | The accumulation of errors during both stages of trial resulted in a fundamentally unfair adjudicatory proceeding in violation of Cole's rights pursuant to the Fourteenth Amendment to the United States Constitution and Article II, Section 7 of the Oklahoma Constitution. |
| Proposition XIII: | Cole's conviction and death sentence was imposed under the influence of passion, prejudice and was otherwise arbitrary; and in addition, the state presented insufficient evidence to support the "heinous, atrocious, or cruel" aggravating circumstance in violation of Cole's rights under the Fourteenth Amendment to the United States Constitution and Article II, Section 7 of the Oklahoma Constitution. |

The OCCA affirmed his conviction and sentence. Cole v. State, 164 P.3d 1089 (Okla. Crim. App. 2007). On May 19, 2008, in Cole v. Oklahoma, 553 U.S. 1055 (2008), the United States Supreme Court denied Cole's petition for writ of certiorari.

Cole filed an application for post-conviction relief on February 28, 2007 in which he raised the following five propositions of error:

| | |
|---|---|
| Proposition I: | Mr. Cole was incompetent to stand trial and may be presently incompetent as well. |
| Proposition II: | Trial counsel's failure to present compelling mitigating evidence in the second stage rendered their performance deficient to the prejudice of Mr. Cole. |
| Proposition III: | Appellate counsel's performance on direct appeal was deficient and deprived Mr. Cole of full and fair appellate proceedings in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. |
| Proposition IV: | New rule of law renders Mr. Cole's sentence suspect and unreliable in violation of his due process right to a fundamentally fair trial. |
| Proposition V: | The cumulative impact of errors identified on direct appeal and post conviction rendered the proceeding resulting in the death sentence arbitrary, capricious, and unreliable, the death sentence in this case constitutes cruel and unusual punishment and a denial of due process of law and must be reversed or modified to life imprisonment or life without parole. |

5

The OCCA denied Cole's application for post-conviction relief in an unpublished decision on January 24, 2008 in OCCA Case No. PCD-2005-23.

On June 2, 2008, Cole initiated these habeas corpus proceedings with the filing of a motion for appointment of counsel (Dkt. # 1). Cole's petition (Dkt. # 16) was filed May 15, 2009, challenging his judgment and sentence of death. Cole identifies the following fourteen (14) grounds for relief:

Ground I:
Mr. Cole was incompetent to stand trial and incompetent throughout all subsequent proceedings in violation of his right to effective assistance of counsel and due process right not to be tried while incompetent.

Ground II:
Mr. Cole was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution because there was a complete breakdown in communication between Mr. Cole and his attorneys.

Ground III:
The trial court erred in denying defense counsel's request for a continuance to acquire and prepare critical mitigating evidence in violation of Mr. Cole's constitutional rights under the Sixth, Eighth and Fourteenth Amendments.

Ground IV:
Mr. Cole was denied his right to effective assistance of counsel during the second stage of his capital case as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution because counsel failed to investigate and present mitigation evidence that would "personalize" him to the jury.

Ground V:
Appellate counsel performed ineffectively on direct appeal in violation of Petitioner's rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.

Ground VI:
The status of Oklahoma's crime of child abuse murder as one of general intent fails to provide a constitutionally adequate culpability requirement that must result in vacatur of the death sentence as having been imposed in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

Ground VII:       The admission of gruesome autopsy photos deprived Mr. Cole of his rights under the Eighth and Fourteenth Amendments of the United States Constitution.

Ground VIII:      Prosecutorial misconduct in seeking sympathy for the decedent by repeated references to God and religion infected both stages of Mr. Cole's trial resulting in violations of his rights under the Eighth and Fourteenth Amendments of the United States Constitution.

Ground IX:        Failure to provide an adequate instruction that informs the jury that it must find "conscious physical suffering" as a fact beyond a reasonable doubt before concluding that the murder was "especially heinous, atrocious, or cruel" deprived Mr. Cole of his Sixth Amendment right to a fair trial, his Eighth Amendment right to a reliable sentencing determination, and his Fourteenth Amendment right to due process of law.

Ground X:         Mr. Cole's sentence does not comport with the Eighth and Fourteenth Amendments to the United States Constitution because there is insufficient evidence to support that the murder is "especially, heinous, atrocious, or cruel."

Ground XI:        Oklahoma's "heinous, atrocious, or cruel" aggravating circumstance is unconstitutionally vague and overbroad.

Ground XII:       The "heinous, atrocious, or cruel" aggravating circumstance fails to narrow the class of defendants eligible for the death penalty in violation of the Eighth and Fourteenth Amendments to the United States Constitution as it simply mirrors the elements of the underlying offense of child abuse murder.

Ground XIII:      The trial court's failure to instruct the jury it must find the aggravating circumstances outweigh the mitigating evidence beyond a reasonable doubt denied Mr. Cole his constitutional right to a jury trial under the Sixth, Eighth, and Fourteenth Amendments.

Ground XIV:       The cumulative effect of errors at both phases of the trial deprived Mr. Cole of his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution.

## GENERAL CONSIDERATIONS

### I.     Exhaustion

Generally, federal habeas corpus relief is not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition.  28 U.S.C. § 2254(b)(1)(A); Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977) (reviewing history of exhaustion requirement).  In every habeas case, the Court must first consider exhaustion. Harris, 15 F.3d at 1554.  "States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991) (explaining that the exhaustion requirement is "grounded in principles of comity").  In most cases, a habeas petition containing both exhausted and unexhausted claims is deemed a mixed petition requiring dismissal.  Where it is clear, however, that a procedural bar would be applied by the state courts if the claim were now presented, the reviewing habeas court can conduct a procedural bar analysis instead of requiring exhaustion. Coleman, 501 U.S. at 735 n.1 (citations omitted).  Respondent contends that some of Cole's claims are unexhausted.  Therefore, the Court will address the threshold question of exhaustion as it arises in each ground.

### II.     Procedural Bar

The Supreme Court has considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules.  See, e.g., Francis v. Henderson, 425 U.S. 536 (1976).  Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground.  Coleman, 501 U.S. at 750; Medlock v. Ward, 200 F.3d 1314, 1323 (10th Cir. 2000).  A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law.  Ake  v. Oklahoma, 470 U.S.

68, 75 (1985); <u>Duvall v. Reynolds</u>, 139 F.3d 768, 796-97 (10th Cir. 1998). If the state court finding is "strictly or regularly followed" and applied "evenhandedly to all similar claims," it will be considered "adequate." <u>Maes v. Thomas</u>, 46 F.3d 979, 986 (10th Cir. 1995) (citing <u>Hathorn v. Lovorn</u>, 457 U.S. 255, 263 (1982)). To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. <u>Coleman</u>, 501 U.S. at 749-50; <u>Wainwright</u>, 433 U.S. at 91.

## III.  Standard of Review - AEDPA

This Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). <u>Snow v. Sirmons</u>, 474 F.3d 693, 696 (10th Cir. 2007). Under the AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. <u>Alverson v. Workman</u>, 595 F.3d 1142, 1146 (10th Cir. 2010) (citing <u>Snow</u>, 474 F.3d at 696). When a state court has adjudicated the merits of a claim, a petitioner may obtain federal habeas relief only if the state decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"[3] or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>See</u> 28 U.S.C. § 2254(d)(1)-(2); <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 402 (2000); <u>Neill v. Gibson</u>, 278 F.3d 1044, 1050-51 (10th Cir. 2001).

---

[3]     A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. <u>See</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006).

The first step in applying § 2254(d)(1) is to assess whether there was clearly established federal law at the time the conviction became final, as set forth in the holdings of the Supreme Court. House v. Hatch, 527 F.3d 1010, 1016-17 (10th Cir. 2008). If clearly established federal law exists, the Court must then consider whether the state court decision was contrary to or involved an unreasonable application of Supreme Court law. Id. at 1018. When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). It is not necessary, however, that the state court cite to controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court law. Early v. Packer, 537 U.S. 3, 8 (2002). Further, the Supreme Court has recently held that "review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, -- U.S. --, 131 S. Ct. 1388, 1398 (2011). Thus, "evidence introduced in federal court has no bearing on §2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of §2254(d)(1) on the record that was before that state court." Id. at 1400 (footnote omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, -- U.S. --, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Application of § 2254(d)(2) requires the Court to review any factual findings of the state court to ascertain whether they were unreasonable in light of the evidence presented at trial. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would

have reached a different conclusion in the first instance." Wood v. Allen, -- U.S. --, 130 S. Ct. 841, 849 (2010) (citing Williams, 529 U.S. at 410). The "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## GROUNDS FOR RELIEF

I.  **Incompetency claims (ground one and preliminary request for tolling and abeyance)**

For his ground one claims, Cole alleges that his due process rights as well as his right to effective assistance of counsel were denied because he was incompetent to be tried and to proceed on appeal and post-conviction. Cole raises a substantive competency claim, as well as a procedural competency claim. Dkt. # 16 at 24-25. Cole also asserts that his trial counsel was ineffective for allowing him to be tried while incompetent. Additionally, in his "preliminary request for tolling and abeyance," Cole complains that he is presently incompetent to proceed in this matter and that the Court should equitably toll the state of limitations and stay these proceedings until his competency is restored. See Dkt. # 16 at 9. In order to place this "preliminary request" in context with the other proceedings relating to Cole's alleged incompetency, the Court will analyze and consider it after the discussion of Cole's ground one claims. The Court notes that this "preliminary request" is not a request for habeas relief.

A.  **Clearly established federal law**

It is well established that a criminal defendant, like Cole, has the constitutional right to be competent to stand trial. See Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Drope v. Missouri, 420 U.S. 162, 172 (1975); Pate v. Robinson, 383 U.S. 375, 378 (1966); Dusky v. United States, 362 U.S. 402 (1960) (per curiam). In Dusky, the Supreme Court held that the standard to determine

competency is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402. "A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent." Allen v. Mullin, 368 F.3d 1220, 1239 (10th Cir. 2004)(citation omitted).

### B. Procedural Background and the OCCA's Decision

Cole's trial counsel first raised a question regarding Cole's competency in July 2003 and filed an application for competency evaluation. O.R. Vol. I at 55-56. The trial court ordered a competency evaluation. Id. at 62-63. Cole was evaluated by Samina R. Christopher, Ph.D., of the Oklahoma Forensic Center and found to be competent to stand trial. Id. at 62-63, 74; Tr. 8/22/03 at 2-4. At the post-evaluation competency hearing, Cole's trial attorneys stipulated to the finding that Cole was competent and Cole waived a competency jury trial. O.R. Vol. I at 74; Tr. 8/22/03 at 2-7.

In July 2004, Cole's trial counsel again filed an application for determination of competency alleging in part: "Defendant's mental state and communication abilities are such that they seriously interfere with his understanding of the proceedings against him and with his capability of aiding his attorney in preparation for trial." O.R. Vol. II at 239-40. The trial court again ordered an evaluation. Id. at 245. Cole was again evaluated by Dr. Christopher and was found competent. Id. at 252-59. This time there was a jury trial on the issue of Cole's competency to stand trial. The trial was held September 13-14, 2004. Cole's attorneys presented Paula Monroe, Ph.D., a licensed clinical psychologist, who testified that she believed Cole was competent to stand trial. Tr. 9/13-14/04 at

12

128, 134-36.  Likewise, the prosecution presented the testimony of Dr. Christopher, the forensic

psychologist from the Oklahoma Forensic Center who had evaluated Cole twice pursuant to the trial

court's orders.  Dr. Christopher testified that she also believed Cole was competent to stand trial.

Tr.  9/13-14/04 at 244, 246.[4]  Two attorneys on Cole's defense team testified as to the difficulties

the team had experienced representing Cole.  See, e.g., Tr. 9/13-14/04 at 156-58, 174, 182-184, 201-

02.  His defense team believed that Cole could not rationally assist counsel due to his obsession with

his religious beliefs.  See id.  The jury determined that Cole was competent to stand trial.  See Tr.

9/13-14/04 at 284.

After the jury trial on the issue of competency and less than two weeks prior to trial, Cole's

trial counsel filed a motion for continuance.  O.R. Vol. II at 317-45.  In that motion, counsel

requested a continuance in part because Cole was not cooperating with defense counsel and, thus,

impeding preparation for trial.  Id. at 317-18.  Cole's counsel did not allege in this motion that Cole

was incompetent.  See id. at 317-45.  At the hearing on the motion for continuance held on October

4, 2004, the trial court had a discussion with Cole without counsel for either party present.  In

denying the motion for continuance, the court noted that it was "unfortunate" that trial counsel was

not able to communicate effectively with Cole but expressed no concern regarding his competency

to stand trial.  Tr. 10/4/04 at 23-24.

Cole's jury trial commenced October 12, 2004.  His competency was not raised during his

trial.  As discussed above, the jury found Cole guilty of child abuse murder and recommended a

sentence of death.

---

[4]     The testimony of Drs. Monroe and Christopher is discussed in greater detail in subpart C
below.

While he omitted the issue of competency in his direct appeal, Cole alleged in his post-conviction application that he was incompetent to stand trial. The OCCA performed a merits review of Cole's competency claim when it denied his ineffective assistance of appellate counsel claim for failing to raise the competency issue on direct appeal[5] and found as follows:

> Accordingly, we find, first, that his claim has been waived, as it certainly could have been raised on direct appeal. Secondly, we find that, to the extent that the claim was raised on direct appeal. . . , it was rejected and is res judicata. Third, we find that, to the extent that any of the claim survives, it fails. Both a jury of Petitioner's peers and health professionals found he was competent to stand trial, and the fact that appellate counsel may not have directly raised this claim on appeal would not on this record amount to ineffective assistance. While Petitioner's extreme religious views may be difficult to appreciate to the common man and may have led to some decisions that few would make, we are not prepared to say counsels' decision to forego review of this claim – that Petitioner's religious beliefs rendered him incompetent – was ineffective, or for that matter even wrong, based upon this record. Nor do the exhibits attached to the post-conviction application convince us that an evidentiary hearing is needed on this issue.

Cole v. State, Opinion Denying Application for Post-Conviction Relief at 4, Case No. PCD-2005-23.

## C.    Incompetency to be tried (ground one)

### 1.    Procedural competency claim

Cole argues that his procedural due process rights were violated in two ways: (1) by the trial court's failure to halt Cole's trial to conduct another competency determination, and (2) his competency trial was inadequate due to ineffective assistance of counsel. See Dkt. # 16 at 51. Respondent contends that Cole's procedural competency claim is unexhausted and, as a result, the Court should apply anticipatory procedural bar and decline to adjudicate the procedural portion of Cole's ground one claim.

---

[5]    The OCCA looks to the merits of the omitted issue when it determines appellate counsel effectiveness. Hooks v. State, 902 P.2d 1120, 1123 (Okla. Crim. App. 1995).

A state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition. See 28 U.S.C. § 2254(b)(1)(A); Hawkins v. Mullin, 291 F.3d 658, 668 (10th Cir. 2002). A claim has been exhausted when it has been "fairly presented" to the state court. Picard v. Connor, 404 U.S. 270, 275 (1971). "Fair presentation" requires more than presenting "all the facts necessary to support the federal claim" to the state court or articulating a "somewhat similar state-law claim." Bland v. Sirmons, 459 F.3d 999, 1011 (10th Cir. 2006) (citing Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam)). "Fair presentation" means that the petitioner has raised the "substance" of the federal claim in state court. Picard, 404 U.S. at 278. The petitioner need not cite "book and verse on the federal constitution," id. (internal quotation marks omitted), but the petitioner cannot assert entirely different arguments from those raised before the state court. Bland, 459 F.3d at 1011. The state courts must be provided a "fair opportunity" to apply controlling legal principles to the facts bearing upon a constitutional claim. Picard, 404 U.S. at 276-77.

Not only did Cole fail to raise his procedural competency claim, including the claim of ineffective assistance of counsel, to the Oklahoma court on direct appeal, but he also failed to raise these issues in his application for post-conviction relief. Although he raised the substantive competency claim with the Oklahoma court, he never raised the procedural due process claim that he does in his habeas petition. In his post-conviction application, counsel argued that Cole was incompetent before, during, and after trial. Counsel claimed Cole was unable to communicate with counsel due to his religious beliefs. The issue raised to the OCCA challenged Cole's substantive due process claim of incompetency, not procedural. Because Cole never presented the issue of inadequacy of his state court proceedings to the OCCA, these claims are unexhausted.

Cole, in his reply brief, argues that he fairly presented his procedural competency claim because he cited several cases that involve a procedural competency claim. Likewise, Cole claims that he raised the claim in his post-conviction application by stating that "[the trial] judge did not see fit to question [his] competency and halt the trial. As a result, it is more likely than not that Mr. Cole was indeed incompetent during [his] trial." See Dkt. # 28 at 12 (citing Application for Post-Conviction at 19, Case No. PCD-2005-23). However, Cole cited these cases and made the aforementioned statement in support of his substantive competency claim that "Mr. Cole was incompetent to stand trial and may be presently incompetent as well." See Application for Post-Conviction at 9, Case No. PCD-2005-23. At no point in his post-conviction application did Cole argue that the trial judge ignored evidence of Cole's incompetency and, as a result, failed to hold a competency hearing, or an adequate competency hearing. See Allen, 368 F.3d at 1239 (citations omitted) ("A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing." In evaluating a procedural competency claim, the court looks at whether "the judge ignored evidence that objectively would have raised doubt about the defendant's fitness to proceed.").

Cole also argues that he raised the substance of his claim that he received ineffective assistance of counsel at his competency hearing in propositions one and two of his post-conviction application. To the contrary, as discussed above, Cole's first proposition in his post-conviction application pertained to his substantive incompetency claim – there was no procedural incompetency or ineffective assistance of counsel claim asserted therein. Proposition two of his post-conviction application involved an ineffective assistance of counsel claim for failing to present compelling mitigating evidence in the second stage of his trial. This second proposition did not raise any claim

involving Cole's competency hearing which occurred prior to trial. Thus, the Court finds that Cole's procedural competency claim, including the ineffective assistance of counsel claim, is unexhausted.

If a habeas petitioner has not exhausted his state remedies, his petition is generally denied without prejudice so that he may present his claims to the state court. See Coleman v. Thompson, 501 U.S. 722, 731 (1991). However, if "the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claims procedurally barred," then the petitioner is considered to have procedurally defaulted his claims and federal habeas review is precluded. Id. at 735 n.1. Although the claim is technically unexhausted, were Cole to attempt to now present the claim to the Oklahoma state courts in a second application for post-conviction relief, it would be deemed procedurally barred. See Okla. Stat. tit. 22, §§ 1086, 1089(D)(2) (providing, collectively, that all grounds for relief which are actually known or which should have been known through the exercise of due diligence must be brought in an initial application for post-conviction relief). Thus, the claim is subject to an "anticipatory procedural bar." See Anderson v. Sirmons, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007). A federal district court "does not address issues that have been defaulted in state court on an independent and adequate procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998) (citations omitted).

The Tenth Circuit has recognized Oklahoma's procedural bar of claims that are raised in a second application for post-conviction relief as independent and adequate. Hawkins, 291 F.3d at 670; Thomas v. Gibson, 218 F.3d 1213, 1221-22 (10th Cir. 2000). Cole's arguments against the independence and adequacy of Oklahoma's procedural bar are unavailing. Cole, relying upon Valdez v. State, 46 P.3d 703, 704-05, 710-11 (Okla. Crim. App. 2002), and several other OCCA

cases, claims that Oklahoma's procedural rule barring claims not raised in a first post-conviction petition is inadequate to preclude federal habeas review because the OCCA has, on occasion, chosen to review the merits of a defaulted claim to prevent any miscarriage of justice. The Tenth Circuit rejected such a claim in Spears v. Mullin, 343 F.3d 1215, 1254-55 (10th Cir. 2003), and found that Oklahoma's procedural bar is applied regularly and consistently in the "vast majority of cases." Id. (quoting Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995)). Moreover, the Supreme Court recently recognized that a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default. See Walker v. Martin, 562 U.S. -- , 131 S. Ct. 1120, 1128 (2011) (citing Beard v. Kindler, 558 U.S. -- , 130 S. Ct. 612, 618 (2009)). This Court finds that Oklahoma's procedural bar is adequate to preclude federal habeas review.

Cole also relies upon Ake v. Oklahoma, 470 U.S. 68, 75 (1985), and Valdez to argue that this particular procedural default rule is not independent of federal law because it depends on an antecedent ruling on federal law. As the Supreme Court recognized in Stewart v. Smith, 536 U.S. 856 (2002), just because a state court looks to the merits of the claim does not mean that it decided the claim on the merits. A state court can look to the merits of a claim in order to identify the type of claim raised without incorporating federal law into its decision and running afoul of the independence rule. Id. at 859-60. At most, the OCCA looked to the claims raised and found no reason to explore the application of a miscarriage of justice exception. By doing so, its decision did not lose its independence. The Tenth Circuit's recent decision in Gardner v. Galetka, 568 F.3d 862 (10th Cir. 2009), cert. denied, 130 S. Ct. 1737, 176 L. Ed. 2d 215 (U.S. Mar 8, 2010), is also

instructive. While ultimately resolving the issue on the merits, the circuit court noted that exceptions

to a state's procedural bar would not automatically result in a finding of lack of independence:

> We do not think that a state's decision to allow exceptions to its procedural bar in the
> interest of preventing "fundamental unfairness," which requires an examination of
> the merits, makes the underlying bar any less procedural. If this were so, any
> procedural bar with an exception based on avoiding a fundamental miscarriage of
> justice would lose its character as an independent procedural ground under Michigan
> v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

Gardner, 568 F.3d at 884. This Court finds that Oklahoma's procedural bar is independent of federal

law.

Cole may overcome the procedural bar only if he can demonstrate cause and prejudice, or

that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501

U.S. at 750. To satisfy the "fundamental miscarriage of justice" standard, the petitioner must

"supplement his habeas claim with a colorable showing of factual innocence." Demarest v. Price,

130 F.3d 922, 941 (10th Cir. 1997). Cole does not allege any basis for a finding of cause and

prejudice or a fundamental miscarriage of justice for his general procedural due process claim. He

does allege that his appellate counsel's failure to raise the ineffective assistance of counsel claim

constitutes cause to excuse the procedural default. See Dkt. # 16 at 61. However, this Court cannot

consider ineffective assistance of appellate counsel as a ground for avoiding a procedural default

unless Cole raised that ground in state court. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000)

( "[I]neffective assistance adequate to establish cause for the procedural default of some other

constitutional claim is itself an independent constitutional claim . . . [and] . . . generally must be

presented to the state courts as an independent claim before it may be used to establish cause for a

procedural default." (internal quotation marks omitted)). Here, Cole never raised in state court a

claim that his appellate counsel was ineffective for failing to assert that Cole received ineffective

assistance of counsel during his competency trial. The closest he came was in his post-conviction application wherein he asserted that his appellate counsel was ineffective for failing to raise the competency issue and for failing to present additional evidence regarding Cole's purported incompetency. See Application for Post Conviction Relief at 28, Case No. PCD-2005-23. The Court cannot, however, read this claim to encompass his present ineffectiveness claim. Thus, Cole cannot establish cause and prejudice.

Cole also alleges that failure to review his ineffective assistance of counsel claim would result in a fundamental miscarriage of justice. See Dkt. # 16 at 61-62. However, at no point in his habeas petition does Cole make any "colorable showing of factual innocence." See Demarest, 130 F.3d at 941. As a result, this Court will apply anticipatory procedural bar and decline to determine the merits of Cole's procedural competency claim, including his claim of ineffective assistance of counsel.

**2.** *Substantive competency claim*

Cole argues that the OCCA's rejection of his claim in his post-conviction application that he was tried while actually incompetent was an unreasonable application of clearly established law, and involved an unreasonable determination of the facts based upon the evidence that was before that court. See 28 U.S.C. § 2254(d)(1)-(2).

It is a well established legal principle that the criminal trial of an incompetent violates due process. Drope, 420 U.S. at 172 (the prohibition of trial of incompetent persons is "fundamental to an adversary system of justice"). The test for determining competency to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational as well as factual understanding of the proceedings against him." Dusky, 362 U.S. at 402.

The due process requirement that a defendant be competent is a continuing requirement subject to a change in status. A defendant must be competent throughout the entire trial. <u>Drope</u>, 420 U.S. at 181.

In denying this claim, the OCCA found as follows:

> Accordingly, we find, first, that his claim has been waived, as it certainly could have been raised on direct appeal. Secondly, we find that, to the extent that the claim was raised on direct appeal . . . , it was rejected and is res judicata. Third, we find that, to the extent that any of the claim survives, it fails. Both a jury of Petitioner's peers and health professionals found he was competent to stand trial . . . .

Opinion Denying Application for Post-Conviction Relief at 4, Case No. PCD-2005-23**.**

Claims of substantive incompetence cannot be waived and are not subject to a procedural bar; thus, this Court's review of this claim is not precluded by the OCCA's procedural ruling. <u>See</u> <u>Rogers v. Gibson</u>, 173 F. 3d 1278, 1289 (10th Cir. 1999). Moreover, the OCCA's application of the doctrine of res judicata does not preclude habeas review. <u>See</u> <u>Cone v. Bell</u>, -- U.S. --, 129 S. Ct. 1769, 1781 (2009) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review."). The Court will review Cole's substantive competency claim pursuant to the standards set forth in the AEDPA.

Competency to stand trial is a factual question. <u>Bryson v. Ward</u>, 187 F.3d 1193, 1201 (10th Cir. 1999) (citing <u>United States v. Boigegrain</u>, 155 F.3d 1181, 1189 (10th Cir. 1998)). A state court's factual finding of competency is presumed correct. <u>See</u> 28 U.S.C. § 2254(e)(1). A petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Bryson</u>, 187 F.3d at 1201. A federal court may not issue a writ of habeas corpus unless the state courts' competency decisions were based on an unreasonable determination of the facts in light of the evidence. <u>See</u> 28 U.S.C. § 2254(d)(2).

In support of this claim, Cole submits a multitude of additional evidence, including the report of Raphael Morris, M.D., an expert retained solely for these habeas corpus proceedings. See Dkt. # 16, Ex. 5. Dr. Morris's report was not presented to the Oklahoma state courts. See id. at 1. While the Court does not agree with respondent's contention that the additional evidence transforms Cole's claim into a new, unexhausted claim, see Dkt. # 23 at 22, review under the AEDPA is limited to the record that was before the OCCA when it adjudicated the claim on the merits. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Therefore, the Court will not consider Dr. Morris's report or any other evidence submitted for the first time in federal court in adjudicating Cole's substantive competency claim.

The record shows that on July 23, 2003, Dr. Christopher, pursuant to the first order for competency evaluation issued by the trial court, administered a mini-mental status exam and conducted an interview of Cole wherein they discussed the charges he faced, court procedures, and Cole's knowledge regarding the same. Tr. 9/13-14/04 at 233-34. Dr. Christopher testified that Cole was very cooperative and was able to discuss the charges he faced and potential penalties. Tr. 9/13-14/04 at 236. Dr. Christopher testified that her interview with Cole led her to believe he could assist his attorney. Tr. 9/13-14/04 at 238. Cole's trial counsel stipulated to Dr. Christopher's findings from this evaluation. See Tr. 8/22/03 at 3. Dr. Christopher examined Cole again in July 2004 pursuant to the trial court's second order directing a competency evaluation. Tr. 9/13-14/04 at 241. Again, Dr. Christopher's professional opinion was that Cole was competent to stand trial. Tr. 9/13-14/04 at 243. Dr. Christopher stated that, in her opinion, "his strong belief in religion does not rise to the level of being a delusion and, in my opinion, does not impair his ability to understand his charges or assist his attorney." Tr. 9/13-14/04 at 244. Dr. Christopher stated the following in

response to cross-examination: "In my opinion he can discuss his charges. He's doing it with me. He can discuss court procedures. He can hold a rational discussion with me that is logical, that is easy to comprehend. It's what I call goal directed. . . . I don't see any reason why he can't do that with attorneys as well." Tr. 9/13-14/04 at 247.

Dr. Monroe, Cole's expert at his competency jury trial, also examined Cole and stated that she found him competent to stand trial. Dr. Monroe testified that Cole understood the nature of the charges against him and he had the ability to assist his attorneys. Tr. 9/13-14/04 at 128, 134. Dr. Monroe testified that she believed Cole was choosing not to assist his trial counsel. Tr. 9/13-14/04 at 135, 142-46.

In support of his post-conviction claim that he was not competent to stand trial, Cole submitted affidavits from his trial and defense team, as well an affidavit from his wife's attorney, regarding Cole's conduct at trial. See, e.g., Application for Post Conviction Relief, Exs. 1-3, Case No. PCD-2005-23. The affidavit from the attorney, Anastasia Cesario, also sets forth the information gained from her interviews with the court staff and a juror on this subject. See id., Ex. 3. These individuals observed that Cole appeared disengaged and disinterested at trial. See id., Exs. 1-3. He also submitted the affidavit of the investigator working on his post-conviction to support the fact that Cole continued to refuse to assist with his defense in his post-conviction proceeding, see id., Ex. 4a, and the affidavit of Cole's former cellmate at the Oklahoma State Penitentiary, who outlined some of Cole's peculiar behavior while imprisoned. See id., Ex. 5. In addition, he obtained an affidavit from Bill Sharp, Ph.D., who explained that Cole's alcohol dependence might partially explain Cole's difficultly in communicating with his attorneys. See id., Ex. 6.

Cole was examined by two licensed clinical psychologists who both had a vast amount of experience in determining competency for criminal proceedings. At Cole's jury trial on the issue of competency, not only did Dr. Christopher testify that Cole was competent, but also Cole's own expert testified that Cole was competent. There is not a single mental health professional who opined in the state court record that Cole was incompetent at the time of trial.[6] The jury was properly instructed on the legal standard to determine Cole's competency, and determined that he was indeed competent to stand trial. Cole has failed to demonstrate that the OCCA's rejection of his competency claim was an unreasonable determination of the facts in light of the evidence. See 28 U.S.C. § 2254(d)(2). Because the trial court held a competency hearing and found Cole competent, and because Cole failed to rebut the presumption of his competence with clear and convincing evidence, habeas relief must be denied on this claim. See 28 U.S.C. § 2254(d)(2), (e)(1).

Cole also alleges he was incompetent during his state court appeal and collateral proceedings. Respondent contends that the only claim necessary to address when determining Cole's substantive competency claim is his allegation that he was incompetent when he was tried, convicted, and sentenced to death. While Cole did allege in his post-conviction application that he "may be presently incompetent as well," Cole did not "fairly present" this issue to the OCCA. See

---

[6]     On December 18, 2007, almost ten months after his post-conviction application was filed, Cole did submit a Notice of Competency Evaluation to the OCCA in his post-conviction proceedings, which attaches the report of J. Randall Price, Ph.D. Dr. Price's report was not submitted as an exhibit to Cole's post-conviction application. Dr. Price did not opine on Cole's competency to stand trial but, rather, he was hired to provide an opinion of Cole's competency at the time of the post-conviction proceedings. See Dkt. # 16, Ex. 4. The OCCA noted that Dr. Price's report raises "potentially valid issues concerning Petitioner's present competency to be executed" but "these claims are insufficient to be granted any post-conviction relief in this case." Opinion Denying Post-Conviction Application, Case No. PCD-2005-23, at 5 n.1 (emphasis in original).

Application for Post Conviction Relief at 9, Case No. PCD-2005-23. Nonetheless, this Court may deny relief on the merits of an unexhausted claim though there is no state court opinion to which to accord deference. Cole has cited no applicable Supreme Court precedent establishing that habeas corpus relief would be appropriate due to incompetency of the petitioner during his state appellate or post-conviction proceedings. Cole has requested no remedy in these proceedings other than a new trial (and the tolling and abeyance of these proceedings discussed below); a new trial would not be an appropriate remedy where the petitioner was competent during trial but unable to assist counsel in only his appeal or post-conviction proceeding. Further, Cole provides no evidence that he was unable to assist his counsel in his direct appeal. While he provides affidavits from trial counsel and post-conviction counsel, it is notable that he provides no information relating to his communication with his appellate counsel. Moreover, it is well settled that the Constitution does not provide a right to counsel in collateral proceedings, such as a state court post-conviction proceeding. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Additionally, the Supreme Court has never recognized a federal constitutional right to competency in state court post-conviction proceedings. Cole is not entitled to habeas relief as a result of his alleged incompetency during his state court appellate and post-conviction proceedings.

Cole is therefore denied relief on his ground one claim.

**D.      Current incompetency (preliminary request for tolling and abeyance)**

In his "preliminary request for tolling and abeyance," Cole contends that he is presently incompetent to proceed in this matter and that the Court should equitably toll the state of limitations and stay these proceedings until his competency is restored. See Dkt. # 16 at 9. Respondent argues

the Court should deny Cole's request for equitable tolling and abeyance and review Cole's petition for habeas relief as filed. See Dkt. # 23 at 7.

Cole argues that he suffers from paranoid schizophrenia with grand delusions which has rendered him unable to assist counsel in this matter. In support, he presents the report of Dr. Morris who was retained by Cole's counsel in these habeas proceedings in part to opine on whether Cole suffers from a diagnosable mental disorder and whether he has the capacity to assist his counsel in these proceedings. See Dkt. # 16, Ex. 5, at 3. Dr. Morris summarized his findings as follows:

> [I]t is my expert opinion, which is based on a reasonable degree of medical certainty, that Mr. Cole is currently and was incompetent during his state court proceedings to assist his attorneys. Mr. Cole's inability to assist his attorneys stems from Mr. Cole's schizophrenia, paranoid type, with grandiose delusions, which have manifested as Mr. Cole's hyper-religiosity. In this context, his inability to assist is not under his control and his behaviors towards his legal team are not based on rational thought.

Id. at 2.

Even accepting as true Cole's allegations that he is unable to assist counsel in these habeas proceedings, the Court finds that Cole's request for a stay of these proceedings, for equitable tolling of the statute of limitations, and for a hearing on his alleged present incompetency should be denied.

The right to counsel in a federal habeas corpus action seeking to set aside a death sentence comes from statute, not the Constitution. See 18 U.S.C. § 3599(a)(2) (granting right to counsel in capital habeas cases); Finley, 481 U.S. at 555. Likewise, neither the Supreme Court nor the Tenth Circuit has ever found a federal right to be competent to assist habeas counsel.

The Court acknowledges that the Ninth Circuit, in Rohan v. Woodford, 334 F.3d 803, 813 (9th Cir. 2003), held that there is a right to competence to assist habeas counsel implied in 18 U.S.C.

§ 3599(a)(2).[7] However, absent any guidance from the Supreme Court or the Tenth Circuit to the contrary, this Court respectfully disagrees.[8] This subsection declares:

> In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys . . . .

18 U.S.C. § 3599(a)(2). The provision does not mention competence to assist counsel. Rather, it merely grants indigent habeas petitioners under a sentence of death a statutory right to be represented by appointed counsel in a proceeding under 28 U.S.C. §§ 2254 or 2255 and certain additional post-conviction proceedings. Nothing in the "plain language" of the statute, see Harbison v. Bell, 556 U.S. --, 129 S. Ct. 1481, 1486 (2009), requires that an indigent state prisoner under a sentence of death be competent to assist counsel before his federal habeas action may proceed. And nothing in its plain language provides any right to have the habeas proceeding stayed when the petitioner is not competent to communicate rationally with his counsel.

Cole's counsel argues that several of the claims in his petition would be more compelling if he were competent to assist. He refers specifically to Cole's ineffective assistance of counsel claims and Cole's claim that he was incompetent to stand trial. However, under the AEDPA, the

---

[7] The source of the statutory right discovered in Rohan was 21 U.S.C. § 848(q)(4)(b), enacted 22 years earlier. Rohan, 334 F.3d at 814. That provision has been replaced, effective October 13, 2008, by § 3599(a)(2), a "materially identical statute." Nash v. Ryan, 581 F.3d 1048, 1051 n.5 (9th Cir. 2009); see also Harbison v. Bell, 556 U.S. --, 129 S. Ct. 1481, 1489 (2009) ("recodified without change").

[8] Further, the Ninth Circuit is the only circuit to make this finding. Although other circuits have addressed this issue, they have resolved the issue without determining if there is a constitutional or statutory right at all. See Holmes v. Levenhagen, 600 F.3d 756 (7th Cir. 2010); Ferguson v. Secretary of Dept. of Corrections, 580 F.3d 1183, 1222 n.55 (11th Cir. 2009); Paul v. United States, 534 F.3d 832, 845-48 (8th Cir. 2008).

merits rulings of the state court are reviewed only to see if the state court reasonably applied Supreme Court precedent and if the state court's decision was reasonable given the "evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)-(2). The ability to expand the state-court record in the federal proceedings is very limited. 28 U.S.C. § 2254(e)(2). In fact, most recently in Pinholster, the Supreme Court expressly held that "review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 131 S. Ct. at 1398. As a result, there is no need for further factual development that would require Cole's assistance in these proceedings.

Moreover, one of Congress' chief purposes for enacting the AEDPA was to reduce the delays in capital cases on habeas review. Rhines v. Weber, 544 U.S. 269, 276 (2005)(noting that the AEDPA does not deprive district courts of authority to issue stays but it does "circumscribe their discretion"); Woodford v. Garceau, 538 U.S. 202, 206 (2003). This purpose would be undermined if Cole's case were to be stayed despite the fact that Cole's assistance is not needed by counsel in these proceedings and there is no constitutional or statutory right to competency in habeas proceedings.

Cole's case can be distinguished from Rohan, wherein the Ninth Circuit found there is a statutory right to be competent in habeas corpus proceedings. The Rohan court determined that a habeas petitioner must "have the capacity to understand his position and to communicate rationally with counsel." 334 F.3d at 819. The Rohan court also stated that "where an incompetent capital habeas petitioner raises claims that could potentially benefit from his ability to communicate rationally, refusing to stay proceedings pending restoration of competence denies him his statutory

right to assistance of counsel, whether or not counsel can identify with precision the information sought." Id.

In Cole's case, he confessed to police that he committed the abuse that caused his daughter's spine to break and her aorta to rupture. As such, this case is for all intents and purposes a second stage case. Cole claims that he could assist habeas counsel in developing his ineffective assistance of counsel claims for failing to investigate his mental health and his social/family history as well as his competency claims. Dkt. # 16 at 19, 20. First, as discussed above, and as will be reinforced repeatedly throughout this opinion, this Court's review under the AEDPA is limited to the record that was before the state court. See Pinholster, 131 S. Ct. at 1398. Next, Rohan's trial counsel was deceased. Rohan, 334 F.3d at 818 n.10. In contrast, Cole's trial counsel is alive and has actively assisted in providing information in these proceedings. Cole's petition is 167 pages in length with thirty-two attachments including affidavits from trial counsel, appellate counsel, video affidavits of family members, and various other affidavits from investigators delving into Cole's mental health as well as his social and family history. It does not appear Cole could offer substantial additional information pertaining to the issues raised before this Court. Moreover, unlike Rohan, whose competency was never established at a state court level, Cole was granted two court-ordered competency evaluations and a jury trial on his competency, all of which concluded that he was competent to stand trial. As this Court found in Cole's ground one claim, the OCCA's conclusion that Cole was competent to stand trial was not unreasonable and there is no need for further factual

development on the issue. As a result, there is no need for Cole to assist his counsel with developing evidence to support his competency claim.[9]

Thus, it is apparent that, even if Cole is not currently capable of assisting his counsel, his counsel is competent to represent him in these record-based habeas proceedings where no additional factual or evidentiary development is required. The Court therefore finds that Cole's request for equitable tolling and abeyance of these proceedings shall be denied.

## II. Ineffective assistance of counsel due to breakdown in communication (ground two)

For his ground two claim, Cole argues that his Sixth Amendment right to effective assistance of counsel was denied due to a complete breakdown in communication between his counsel and him. Cole claims he was forced to trial with attorneys with whom he could not discuss his case or legal strategies. Dkt. # 16 at 65.

Cole raised this issue in his direct appeal. The OCCA denied his claim on the merits, finding as follows:

> In proposition four, Appellant claims the trial court denied him the right to effective assistance of counsel after he developed a conflict with his trial counsel and requested to have them replaced. The denial of that request, Appellant argues, was a violation of the Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and Article II, sections 7 and 20 of the Oklahoma Constitution.

---

[9] In Lay v. Workman, N.D. Okla. Case No. 08-CV-617-TCK-PJC, the court found that "that the interests of justice require that these proceedings be held in abeyance if Petitioner is indeed incompetent to proceed" and granted an evidentiary hearing pertaining to Lay's competency to proceed in his habeas corpus action. Order, Dkt. # 50 at 14. The factual and procedural circumstances surrounding Lay's case are distinct from those surrounding Cole's case. Lay was permitted to represent himself at trial without the benefit of a competency hearing or a court-ordered competency evaluation. At no point did he receive any sort of competency hearing or jury trial on the issue of his competency. Nor was Lay granted an evidentiary hearing before the OCCA on the issue of his competency. Thus, Lay was deprived of the opportunity to develop a factual record as to his incompetency claim in state court, unlike Cole.

As Appellant's brief freely admits, by the time of trial Appellant "had withdrawn into extreme religiosity, made little if any effort to assist his attorneys or to prepare his defense while awaiting inspiration from God, and sat through the entire trial at counsel table literally not moving a muscle for hours on end while reading the Bible." The record shows Appellant sought to fire his attorneys less than a month before trial, due to "Religious Prejudices." Appellant requested a "Pentecostal team of lawyers" or "of the like". Apparently, due to his trial counsel's tactic of using his extreme religious beliefs to help demonstrate mental incompetence, Appellant believed his attorneys had "spit in the face of God." When questioned by the trial court concerning this issue, Appellant explained his belief that his attorneys had exaggerated his religious stance and therefore he refused to talk with them.

The trial court refused to appoint new counsel, however, basing its decision on reasons that are fully supported by the record. We see no "complete breakdown in communication" of the type addressed in <u>Romero v. Furlong</u>, 215 F.3d 1107, 1111 (10th Cir.2000) and <u>United States v. Lott</u>, 433 F.3d 718, 725-26 (10th Cir.2006). Instead, this record suggests an uncooperative defendant who, religious differences aside, substantially and unreasonably contributed to the communication breakdown. This proposition is without serious merit.

<u>Cole</u>, 164 P.3d at 1093-94.

Cole contends that the OCCA's rejection of his claim constitutes an unreasonable application of clearly established federal law and involves an unreasonable determination of the facts. Dkt. # 16 at 72. Cole argues that the Court should analyze his claim pursuant to Tenth Circuit cases <u>Romero v. Furlong</u>, 215 F.3d 1107 (10th Cir. 2000), and <u>United States v. Hernandez</u>, 849 F.2d 1325 (10th Cir. 1988), which are based upon the U.S. Supreme Court's decision in <u>United States v. Cronic</u>, 466 U.S. 648, 654 (1984).  Respondent contends that the Supreme Court has never considered whether a breakdown in communication violates the federal Constitution by virtue of the right to effective assistance of counsel, and therefore, habeas relief should be denied. Dkt. # 23 at 35. Cole replies that, in the alternative, the Supreme Court has confirmed that general standards constitute clearly established federal law under the AEDPA in absence of a Supreme Court case directly on point.  <u>See</u> Dkt. # 28 at 30 (citing <u>Knowles v. Mirzayance</u>, -- U.S. --, 129 S. Ct. 1411,

1419-20 (2009); Panetti v. Quarterman 551 U.S. 930, 953 (2007)). As a result, Cole argues that the Court could analyze this claim under the general principles of Strickland v. Washington, 466 U.S. 668, 688-89 (1984), and its progeny. Cole is correct that the Supreme Court in Panetti and Knowles stated that, in absence of case directly on point, relief may be granted if the state-court decision unreasonably applied the more general standard, such as that for ineffective assistance of counsel claims established by Strickland. See Knowles, 129 S. Ct. at 1419 ("[T]his Court has repeatedly applied [the standard set forth in Strickland] to evaluate ineffective-assistance-of-counsel claims where there is no other Supreme Court precedent directly on point."); Panetti, 551 U.S. at 953 ("The [AEDPA] recognizes . . . that even a general standard may be applied in an unreasonable manner."). However, this Court need not determine whether the analysis espoused by the Tenth Circuit in Romero and Hernandez is based upon clearly established Supreme Court law, because Cole's claim fails under the more specific inquiry pursuant to Tenth Circuit precedent and the more general principles of Strickland.

A.     *Romero* **and** *Hernandez* **analysis**

The Tenth Circuit has recognized that "a complete breakdown in communication between an attorney and client may give rise to a presumption of ineffectiveness." Romero, 215 F.3d at 1111. If a defendant can demonstrate that there was "[a] complete breakdown in communication" between himself and his attorney, a presumption of ineffectiveness will arise, making it unnecessary for the Court to examine actual performance of counsel. Hernandez, 849 F.2d at 1328 (citing Cronic, 466 U.S. at 658). To prove a complete breakdown in communication, a habeas applicant needs to demonstrate that there was a severe and pervasive conflict with his attorney, or evidence of minimal contact with the attorney rendering meaningful communication impossible. United States v. Lott,

310 F.3d 1231, 1249 (10th Cir. 2002). In addition, Tenth Circuit precedent directs the habeas court to examine: (1) whether the petitioner made a timely motion to request new counsel; (2) whether the trial court adequately inquired into the matter; (3) whether the conflict between the petitioner and his attorney had resulted in a total lack of communication; and (4) whether the petitioner had substantially and unjustifiably contributed to the breakdown in communication. See Romero, 215 F.3d at 1113. To be entitled to habeas relief, the "breakdown in communication . . . cannot be the result of a defendant's unjustifiable reaction to the circumstances of his situation." Id. at 1114.

Here, the OCCA appeared to reject Cole's claim under the third and fourth prongs of the Romero inquiry when it found that there was no "complete breakdown in communication" and that Cole "substantially and unreasonably contributed to the communication breakdown." See Cole, 164 P.3d at 1094. The OCCA's rejection of Cole's theory involved a reasonable application of existing federal law and the factual record.

First, the record does not demonstrate a total lack of communication. See Romero, 215 F.3d at 1113 (third prong). Cole fails to show that his anger at his trial counsel's treatment of his religious beliefs created a complete breakdown in communication. Instead, the evidence supports the conclusion that Cole and his defense team maintained at least some communication. The record clearly establishes Cole was unsatisfied with his appointed attorneys after they questioned his competency based on his religious beliefs. However, the trial court found that there was no evidence to establish that Cole's trial attorneys were prejudiced against Cole's religious beliefs, and that their actions demonstrated they were "aggressive advocates" for Cole. Tr. 10/4/04 at 23. The trial court properly found that the reasons given by Cole were not valid reasons for the discharge of his trial attorneys. Id. at 23-24.

33

A review of that hearing does not reveal that communications had "broken off" at all, but that there were problems communicating with Cole. At no time during the October 4 hearing did Cole ever state to the trial court that he refused to communicate with counsel. In fact, Cole stated that his trial lawyers got frustrated with him when he did not answer their questions because he had not had time to pray about it. Tr. 10/4/04 at 18-19. He stated that he communicated with the investigator assigned to the case and that the investigator was "gruff," but was doing better in trying to communicate with him. Tr. 10/4/04 at 20. Furthermore, the record establishes that Cole communicated with his defense team in the time period leading up to trial. The record shows that Cole communicated with retained experts. During second stage proceedings, Jeanne Russell, Ed.D., testified that she evaluated Cole twice prior to trial and, in addition, she met with Cole one week prior to trial. Tr. Vol. VIII at 11. Further indication that there was not a total breakdown in communication was demonstrated when the trial court questioned Cole about the State's offer of a potential plea bargain. Cole told the trial court that his lawyers had discussed with him the possibility of a plea bargain wherein he would plea guilty and be sentenced to life without parole. Tr. Vol. I at 16. Cole further stated to the trial court that he rejected all plea offers and stood by that decision. Tr. Vol. I at 18. There is simply no evidence in the record demonstrating that any conflict between Cole and his trial counsel resulted in such deterioration of their attorney-client relationship that it jeopardized Cole's right to effective assistance of counsel. Moreover, competent representation is what the Sixth Amendment guarantees; it does not guarantee a meaningful relationship with counsel. Morris v. Slappy, 461 U.S. 1, 14 (1983), and an indigent defendant is not entitled to counsel of his choice. United States v. Nichols, 841 F.2d 1485, 1504 (10th Cir.

1988)(internal citations omitted)("An indigent defendant must be provided with appointed counsel at state expense. But an indigent defendant does not have a right to choose appointed counsel.").

Second, the OCCA did not unreasonably determine that Cole substantially and unjustifiably contributed to the breakdown in communication. See Romero, 215 F.3d at 1113-14 (fourth prong). To be entitled to habeas relief, "[the] breakdown in communication . . . cannot be the result of a defendant's unjustifiable reaction to the circumstances of his situation." Id. at 1114. Any lack of communication here is attributable primarily to Cole and his choice not to communicate with his counsel.[10] As discussed in ground one, Cole's decision regarding how much he communicated with counsel is clearly reflected in the record to be a choice and not an inability. See Tr. 9/13-14/04 at 135, 142-46. Cole was angry after his attorneys challenged his competency based on his religious beliefs, but assured the trial court that he would work with the attorneys and the investigator if the trial court would not appoint him new lawyers. Tr. 10/4/04 at 14, 17-20. As discussed above, Cole informed the trial court that he talked with an investigator, but the investigator was very gruff and mocked God in his presence. Tr. 10/4/04 at 20. However, he then stated that the investigator was doing better as far as trying to communicate with him, apparently in a less offensive manner. Tr. 10/4/04 at 20. The trial court found trial counsel to be zealous advocates and noted that he had seen no evidence that counsel was prejudiced against Cole or his religious beliefs. Tr. 10/4/03 at 23.

Cole has failed to demonstrate that the OCCA's decision that Cole's claim failed under the third and fourth prongs of Romero is an unreasonable application of Supreme Court precedent or

---

[10]     Cole again relies upon Dr. Morris's evaluation and report to support his contention that Cole did not substantially or unjustifiably contribute to the lack of communication. As discussed in ground one, Dr. Morris's report cannot be considered by this Court as it was not presented to the OCCA for consideration. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

an unreasonable determination of facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1)-(2).

**B.     *Strickland* analysis**

Ordinarily, to establish ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient and prejudicial. See Strickland v. Washington, 466 U.S. 668, 690-91 (1984). In this case, Cole does not identify any specific deficiencies in his counsel's performance. Instead, Cole relies on a presumption of ineffectiveness from a breakdown in his ability to communicate with his attorneys. Because Cole cannot show that his counsel's performance was deficient, his ground two claim fails when analyzed pursuant to Strickland as well.

Cole's claim that he was denied effective assistance of counsel due to an alleged complete breakdown of communication does not merit habeas relief. Cole has failed to demonstrate that the OCCA's decision is an unreasonable application of Supreme Court precedent or an unreasonable determination of facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1)-(2). Therefore, Cole is not entitled to habeas relief on this claim.

**III.     Denial of continuance to prepare mitigating evidence (ground three)**

For his third ground for relief, Cole claims the trial court erred when it denied his request for a continuance in order to prepare additional mitigating evidence in violation of his Sixth, Eighth and Fourteenth Amendment rights. Dkt. # 16 at 94.

Approximately three weeks before trial, Cole's trial counsel obtained an MRI of Cole's brain that allegedly revealed abnormalities. See Cole, 164 P.3d at 1093. Believing this evidence could be mitigating, counsel sought to develop it further by hiring an expert. Twelve days before trial, counsel filed an affidavit and motion for continuance, stating that further analysis of the MRI

images "may be necessary." See O.R. Vol. II at 317-45. Counsel also averred that due to staffing shortages at Oklahoma Indigent Defense System (OIDS), he was without co-counsel and explained the difficulties he experienced in scheduling the MRI. Id. at 320.

The trial court conducted a hearing on the motion on October 4, 2004, eight days before trial. The State objected to the requested continuance based on the "press of business and the age of the case." Tr. 10/04/04 at 5. The trial court ultimately ruled that none of the parties was at fault with regard to the delayed MRI testing, but that based upon how long the case had been pending, other business before the court, and the fact that Cole's trial team had purportedly retained an expert who could review and evaluate the MRI, no continuance was necessary. Id. at 21-22.

## A.    Due process claim

The Supreme Court has recognized that an arbitrary denial of a motion for continuance may in some circumstances result in a due process violation. See Ungar v. Sarafite, 376 U.S. 575, 589 (1964) ("The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process . . . .").[11] "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id. (citations omitted). "[W]hen a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion, but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." Case v. Mondragon, 887 F.2d 1388, 1396 (10th

---

[11]    The Court rejects respondent's contention that this claim is not cognizable in a federal habeas corpus proceeding. See Dkt. # 23 at 138.

Cir. 1989) (internal quotation marks omitted); <u>see also</u> <u>Manlove v. Tansy</u>, 981 F.2d 473, 476 (10th Cir. 1992) (same). In considering whether the trial court's decision to deny a continuance deprived the defendant of a fair trial, "this court focuses on the [defendant's] need for the continuance and the prejudice or lack of prejudice resulting from its denial." <u>Lucero v. Kerby</u>, 133 F.3d 1299, 1309 (10th Cir.1998) (citation omitted). The Tenth Circuit stated:

> To determine whether a denial of a continuance is arbitrary or unreasonable, we look to several factors, including: the diligence of the party requesting the continuance; the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

<u>United States v. West</u>, 828 F.2d 1468, 1470 (10th Cir. 1987); <u>see also</u> <u>Manlove</u>, 981 F.2d at 477 (approving of the use of the four factor analysis in habeas proceedings).

In rejecting Cole's claim on the merits, the OCCA stated:

> Considering the record as a whole, we find no abuse of discretion in this ruling. <u>White v. State</u>, 1980 OK CR 10, ¶ 5, 607 P.2d 713, 714. This claim relies on speculation of what might have been found had additional time been granted to perform additional testing. In making its ruling, the trial court obviously considered the additional time between that day and the time defense counsel had remaining before such evidence would have to be presented. The trial court left open a window of opportunity for counsel to accomplish exactly what it wanted. At least two defense witnesses touched upon the subject at hand. While a potential for developing even better evidence on a particular issue nearly always exists, the decision to cut off that window of opportunity in the instant case did not amount to an abuse of discretion. Moreover, we find no ineffective assistance of trial counsel with respect to the way the defense team handled this issue and no prejudice, as no evidence has apparently been developed in the two years since Appellant's trial occurred. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

<u>Cole v. State</u>, 164 P.3d 1089, 1093 (Okla. Crim. App. 2007).

As a preliminary matter, the Court notes that Cole relies primarily on the Declaration of Ruben C. Gur, Ph.D., to support this claim. <u>See</u> Dkt. # 16, Ex. 32. Dr. Gur, a neuropsychologist,

states that "individuals like Mr. Cole who suffer from this amount and type of damage are more likely to act violently" and concludes that Cole's brain damage in all likelihood existed at the time of the offense. Id., ¶¶ 5, 6. It is undisputed that Dr. Gur's declaration was not presented to the OCCA when it considered this claim in Cole's direct appeal and that it was developed and presented for the first time in these habeas proceedings. See id., ¶ 3. While the Court does not agree with respondent's contention that this newly-developed evidence transforms Cole's claim into a new, unexhausted claim, review under §2254(d) is limited to the record that was before the OCCA when it adjudicated the claim on the merits. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Therefore, the Court will not consider Dr. Gur's declaration or any other evidence submitted for the first time in federal court in adjudicating Cole's ground three claim.

**Diligence of the Movant in seeking continuance.** There is no dispute that Cole was diligent in seeking a continuance. See Dkt. # 23 at 43.

**Likelihood of Accomplishing Purpose.** This factor weighs in favor of respondent. This factor as described by the West court is "the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance." West, 828 F.2d at 1470. The purpose underlying Cole's expressed need was to obtain expert testimony explaining the MRI evidence and how the brain damage could explain Cole's abnormal actions. See Defendant's Direct Appeal Brief at 42, Case No. D-2004-1260. Cole argued on direct appeal that "[t]he potent mitigation characteristic of such evidence is readily apparent in that the jury could be shown physical evidence (the MRI slide) that Cole has a physical problem that is beyond his volitional control that affects his behavior in ways that are considered criminal." Id. (emphasis omitted).

Cole has not demonstrated that, had a continuance been granted, he would have been able to procure compelling mitigating evidence in the form of expert analysis of the MRI. The request for a continuance was filed twelve days prior to trial. See O.R. Vol. II at 317-345. When submitting this claim to the OCCA in his direct appeal, Cole provided no extra-record evidence supporting the proposition that his counsel would have been able to obtain mitigating expert analysis if the continuance was granted. Even considering the evidence that Cole presented in his post-conviction proceeding, namely the letters from John D. Hastings, M.D., and Matthew Powers, M.D., who each reviewed the MRI, Cole still has not established that he would have accomplished his purpose had the continuance been granted. Their review of the MRI indicated that the lesion was non-specific and "might be seen in multiple sclerosis, tumor, or small abscess." App. to Post-Conviction, Ex. 7, Case No. PCD-2005-23. Their letters did not in any way link Cole's brain abnormality to his behavior at the time of the crime or otherwise provide an explanation for his mental illness. This evidence, that was produced more than two years after his trial, is not beneficial to Cole.

**Inconvenience to Opposing Party, Witnesses and Court**. Cole claims the trial court should have elaborated on what "other business" the trial court considered when it denied the motion. However, it is well settled that "[t]he interest in a speedy trial is held not only by the defendant, however, but also by the government." United States v. Deters, 143 F.3d 577, 584 (10th Cir. 1998). The trial court denied the motion for a continuance based on the age of the case, other business before the court, and the fact that an expert had presumably been retained to evaluate the MRI. Cole, 164 P.3d at 1093. Even if this factor were to be weighed in favor of Cole, Cole's poor showing on the second and fourth factors indicates that the OCCA's determination of this issue was not unreasonable.

**Prejudice.** Cole bases all of his prejudice argument on the findings of Dr. Gur. As already stated, Dr. Gur's report will not be considered by this Court because this evidence was never presented to the state court. As such, this Court must analyze this claim as it was presented to the state court. As argued on direct appeal, the most Cole demonstrated is that the lesion on Cole's brain could be "potentially powerful mitigation evidence" because expert testimony on the subject "has the potential to address the cause of Cole's abnormal actions" rather than just addressing the symptoms of the lesion. Defendant's Direct Appeal Brief at 42, Case No. D-2004-1260. Cole's argument was based on mere speculation. Cole did not even attempt to expand the record with additional information to support this claim. See Rule 3.11, Rules of the Court of Criminal Appeals, Title 22, Ch.18, App.

At the time the trial court heard Cole's motion for continuance, Cole's counsel led the trial court to believe that an expert had been contacted about the MRI. The trial court determined that because an expert had been contacted about the MRI and that Cole's counsel was in the process of determining how to proceed with the information, Cole had sufficient time between the date of the hearing, October 4, and the time that he wanted to present this evidence. Tr. 10/4/04 at 2-3, 21-22. Regardless of the fact that Cole did not disclose who the expert would be or what his anticipated testimony would be, the trial court determined that if Cole produced the expert, the expert would be allowed to testify at trial. Tr. 10/4/04 at 22.

As discussed above, Cole cannot demonstrate that he would have presented compelling mitigating evidence if the trial court had granted his continuance, as demonstrated by the fact that two years after his conviction he still had not secured an expert who was favorable. Cole, 164 P.3d

at 1093. This fact alone demonstrates that Cole was not prejudiced by the trial court's denial of the continuance.

Further, the aggravating evidence against Cole was strong. The jury found the existence of two aggravating circumstances. Cole was able to present extensive mitigation evidence in the second stage proceedings including several psychological experts. Cole has not demonstrated that, had the trial court granted his continuance and had he actually been able to find favorable expert testimony, the outcome of his sentencing proceeding would have been different. See Manlove, 981 F.2d at 478-79.

In light of the above, Cole has failed to establish that the OCCA's rejection of his ground three due process claim was an unreasonable application of clearly established federal law.

**B.      Ineffective assistance of counsel**

Alternatively, Cole argues that, if the trial court's denial of the continuance did not result in a violation of his due process rights, then his counsel rendered ineffective assistance of counsel in violation of his Sixth Amendment rights in the handling of the MRI. The OCCA rejected this claim and stated: "[W]e find no ineffective assistance of trial counsel with respect to the way the defense team handled this issue and no prejudice, as no evidence has apparently been developed in the two years since Appellant's trial occurred." Cole, 164 P.3d at 1093.

The United States Supreme Court enunciated a two prong test for review of ineffective assistance of counsel claims in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the petitioner must show: (1) that counsel's performance was deficient; and (2) that such deficient performance prejudiced the defense. Id. at 687. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to

42

the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. If Cole is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Id. at 700. As discussed above, Cole has not shown that his counsel could have obtained favorable expert evidence explaining Cole's MRI. As a result, he cannot show that but for his trial counsel's alleged errors, the results of his sentencing would have been any different. Thus, the OCCA's rejection of Cole's ineffective assistance of counsel claim was not an unreasonable application of Strickland. See 28 U.S.C. § 2254(d)(1).

### C.    Right to present a defense and to individualized sentencing

Finally, Cole argues that the denial of the continuance impacted his constitutional right to present a defense and to individualized sentencing. Respondent contends that these claims have never been presented to the OCCA and, thus, are unexhausted and should be procedurally barred. Dkt. # 23 at 50. In his reply, Cole avers that these arguments were embedded in the instant claim, which is based on the denial of the continuance violating his federal constitutional rights under the Sixth, Eighth and Fourteenth Amendments. Cole argues that the denial of the continuance, which effectively prevented him from presenting a defense and from having an individualized sentencing proceeding, likewise violated Cole's federal constitutional rights under the Eight and Fourteenth Amendments. The Court agrees that Cole presented these arguments in some form to the OCCA insofar as these claims are incorporated into his argument that he was deprived of his right to a fundamentally fair trial under the Fourteenth Amendment. And to that extent, these arguments are addressed above. However, Cole made no arguments specifically involving his right to present his defense or his right to an individualized sentencing proceeding, nor did he cite Ake v. Oklahoma,

470 U.S. 68 (1975), or <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978), and their progeny. Thus, to the extent Cole relies upon these cases, his claim was not fairly presented to the OCCA and is unexhausted. If he were to return to the Oklahoma court to exhaust these claims, they would be procedurally barred. Thus, the Court will apply the doctrine of anticipatory procedural bar and decline to consider these claims. <u>See</u> in depth discussion of procedural bar in ground one, <u>supra</u>. Cole has not asserted cause and prejudice or a fundamental miscarriage of justice to overcome this procedural default.

Insofar as his ground three claims are exhausted, Cole has failed to establish that the OCCA's ruling was contrary to, or an unreasonable application of, Supreme Court law. <u>See</u> 28 U.S.C. § 2254(d)(1). Cole is denied habeas relief on his ground three claim.

## IV. Second stage ineffective assistance of counsel (ground four)

Cole, for his ground four claim, contends that he was denied his right to effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments during the second stage of his capital case because his trial counsel failed to investigate and present mitigating evidence that would "personalize" him to the jury. Dkt. # 16 at 86. Cole argues that his trial counsel's failure to interview, or adequately interview, his family members denied him the ability to present compelling mitigating evidence that would have humanized him to the jury. He also claims that information gained during those interviews would have provided a more accurate psychological picture of him. <u>See</u> Dkt. # 16 at 98-99. Additionally, he alleges appellate counsel was ineffective for failing to raise these issues on direct appeal.

To be entitled to habeas corpus relief on a claim of ineffective assistance of counsel, Cole must demonstrate that the OCCA's adjudication of his claim was an unreasonable application of

Strickland v. Washington, 466 U.S. 668 (1984). A defendant can establish the first (deficiency) prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Id. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689. In making this determination, a court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second (prejudice) prong, a defendant must show that this deficient performance prejudiced the defense, to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002). If Cole is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs. Additionally, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (quoting Strickland, 466 U.S. at 689; Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997)). To properly assess an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, the Court must first "look to the merits of the omitted issue."

Cargle v. Mullin, 317 F.3d 1196, 1205 (10th Cir. 2003) (citing Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001)).

The OCCA considered this issue in Cole's post-conviction proceeding and found the issue waived because it could have been, but was not, presented on direct appeal. Opinion Denying Application for Post-Conviction Relief at 5, Case No. PCD-2005-23. In an effort to avoid waiver, Cole also argued that his appellate counsel was ineffective for failing to raise the issue on direct appeal. Application for Post-Conviction Relief at 26, Case No. PCD-2005-23. In order to evaluate the ineffective assistance of appellate counsel claim, the OCCA reviewed the substantive claim and found as follows:

> This case is unlike, say, Garrison v. State, 2004 OK CR 35, ¶ 150, ¶169, 103 P.3d 590, where we found the defendant's trial counsel "failed to provide a significant case in mitigation during the second stage of . . . trial." and that his appellate counsel had been ineffective for failing to raise the obvious claim on appeal. Here, a constitutionally adequate amount of mitigation evidence was offered and admitted through various expert and lay witnesses, including one family member. We layed [sic] out that evidence throughout our Opinion in Petitioner's direct appeal, including a detailed listing in our mandatory sentence review of his capital conviction. See Cole v. State, 2007 OK CR 27, ¶63, 164 P.3d 1089.

> Furthermore, the affidavits attached to Petitioner's post-conviction application do not provide convincing support for a claim of ineffective assistance in trial counsel's interview of Petitioner's family. Rather than dropping the ball on the issue by not interviewing some family members face-to-face, counsel instead made reasonable strategic choices when, upon contacting certain family members by phone, their investigator was confronted by less than sympathetic responses. The fact that Petitioner's first son was not contacted was understandable because counsel had fought hard to keep out Petitioner's abuse of that son from being admitted into evidence. It was a reasonable decision to not present that testimony to the jury, as any focus on the earlier abuse was arguably unhelpful to Petitioner's case.

> We therefore find this proposition is without merit.

Opinion Denying Application for Post-Conviction Relief at 5-6, Case No. PCD-2005-23. After determining that trial counsel was not ineffective, the OCCA denied Cole's request for an evidentiary hearing based on his ineffective assistance of appellate counsel claim. Id. at 7.

Respondent argues that Cole's allegation of ineffective assistance of counsel is procedurally barred and should not be considered by this Court. Dkt. # 23 at 52. The Court invokes its discretion to bypass complex issues of procedural bar where the claim can be more easily disposed of on substantive grounds. See Revilla v. Gibson, 283 F.3d 1203, 1210-11 (10th Cir. 2002); Romero v. Furlong, 215 F.3d 1107, 1111 (10th Cir. 2000).

While the OCCA's opinion on this claim focused on whether Cole's counsel rendered deficient performance, it nonetheless constitutes a decision "on the merits" to which this Court owes deference under § 2254(d) when evaluating whether the alleged errors prejudiced Cole's defense. See Richter, 131 S. Ct. at 784 ("[Section] 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."). This Court finds that Cole's ineffective assistance claim fails on the second prong of Strickland; therefore, the Court will not consider whether trial counsel's performance was deficient.[12] Upon review of the record, this Court concludes that Cole cannot establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his sentencing would have been different. See Strickland, 466 U.S. at 694. Therefore, the requisite showing of prejudice has not been made. In making this determination, the Court has considered "the strength of the State's case and the number of aggravating factors the jury found to exist, as well as the

---

[12]    The performance component need not be addressed first. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

mitigating evidence the defense did offer and any additional mitigating evidence it could have offered." Id. (citing Neill, 278 F.3d at 1062).

First, the case against Cole was strong. The jury found that Cole actually killed Brianna by willfully and maliciously using unreasonable force upon her. O.R. Vol. III at 434, Instruction No. 10. Overwhelming evidence supported this finding. Further, evidence showed that immediately after killing Brianna, Cole went back to playing video games. See Cole, 164 P.3d at 1098. Also, the day after Brianna's death, when authorities first confronted Cole with the medical examiner's ruling that the death was by homicide, Cole's first words were, "How many years am I looking at?", demonstrating guilty knowledge. See id.

The jury found the existence of two aggravating circumstance which were also supported by strong evidence: (1) that Cole had been previously convicted of a felony involving the use or threat of violence to the person; and (2) that the murder was especially heinous, atrocious, or cruel. Id. at 1102. Cole had previously been convicted of a violent felony towards his six-month-old son. Further, nine-month-old Brianna was killed in an exceptionally vile and cruel manner – Cole forcefully folded his daughter over until her spine snapped and her aorta tore, basically folding her in half. Id. at 1099.

Cole presented five witness in the sentencing stage of his trial, including: his step-brother, Leonard O'Neil; three psychologists (including a neuropsychologist); and detention officer, Jolynn Elkin-Hohenstein. He also presented a letter from his ex-wife. He presented the following mitigating evidence: he was sexually molested as a child by a friend of the family; he has brain damage; he confessed to the crime; he expressed remorse; he suffers from intermittent explosive personality disorder; he has a personality disorder not otherwise specified; he is an alcoholic; his life

is valued by his family; he is devoutly religious; he is unlikely to be violent in a prison setting or outside of a domestic relationship; and he does well in a structured prison setting.  See Cole, 164 P.3d at 1102.  In addition to this, evidence showed that Cole attempted to perform CPR on the victim after the incident.  Id.  Cole's first wife described him as a perfect husband, until he became involved with the wrong people and drinking.  Id.  Cole's step-brother described the difficult environment in which Cole was raised and described how he and Cole regularly "huffed" gasoline.  Id.  All of this evidence served to "humanize" Cole to the jury.

In his post-conviction application in state court, Cole presented affidavits[13] to show the nature and extent of available mitigation evidence. He contends that the family members from whom this information was obtained would have been willing to testify to these facts.  He contends that, if presented during the second stage, the following evidence would have altered the jury's decision to impose the death penalty:[14]

---

[13]    In support of his allegations in the habeas petition, Cole submits many affidavits to this Court that were not presented to the Oklahoma court, specifically Exs. 5, 6-8, 12, 13, 17, 18, 20, 22, 25, 26, 28 to his petition (Dkt. # 16). As discussed above, this evidence will not be reviewed when determining if the Oklahoma court's decision was contrary to, or an unreasonable application of, Supreme Court precedent. Under the AEDPA, the Court can consider only the evidence that was submitted to the OCCA when it determined this claim. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

[14]    The Court notes that much of the proffered evidence upon which Cole relies for this proposition is based on hearsay contained within the affidavits of Sandra Collett, an investigator for OIDS (Cole's post-conviction counsel), based on her interviews with Cole's family members. See Dkt. # 16, Exs. 14, 15, 16. The Court may refuse to consider affidavits containing hearsay. See Neill v. Gibson, 278 F.3d 1044, 1056 (10th Cir. 2001) (holding district court did not abuse its discretion in disregarding inadmissible hearsay investigator affidavits presented to support habeas petition); see also Herrera v. Collins, 506 U.S. 390, 417 (1993) (noting that affidavits submitted in habeas action were "particularly suspect" because they were based on hearsay).  However, even considering such affidavits, Cole cannot establish that he was prejudiced by his trial counsel's performance.

- Cole has two paternal cousins who have been diagnosed as paranoid schizophrenic and one who is reported to be paranoid schizophrenic. See Dkt. # 16, Exs. 14-15 (Affidavits of Sandra Collett).

- Two of Cole's brothers were mentally retarded. See id.

- Cole's mother drank and took Benzedrine-based diet pills when she was pregnant with Cole and during all of her pregnancies. See id., Ex. 14.

- Cole's father is addicted to methamphetamine and is a functional alcoholic. See id., Ex. 14.

- Cole's stepbrother, Leonard O'Neil, abused drugs and alcohol. See id., Ex. 15.

- Four of Cole's paternal cousins had a history of drug abuse and two of the four are also alcoholics. See id., Ex. 15.

- There were inappropriate sexual relationships between Cole's family members. Cole's paternal cousin is alleged to have had a sexual relationship with Cole's father. See id., Ex. 15.

- Cole began exhibiting signs of mental illness at an early age, including bizarre phone calls and talk of subliminal messages being sent by a band called Slayer, that would make Cole "do things he didn't want to do." See id., Exs. 9, 14.[15]

---

[15] This bit of evidence obtained from Cole's brother, Robert Cole, should be given little credence, since Robert admitted in his "video affidavit" that he was contacted by Cole's trial team prior to trial and that he was unwilling to provide any information or testify at that time. See Dkt. # 16, Ex. 9. Thus, the failure to discover and present this information at trial cannot be attributed to trial counsel.

- Cole's first son, who is the subject of Cole's conviction for child abuse in California, has no hostile feelings toward Cole and would like to get to know him. See id., Exs. 9, 14.

In his habeas petition, Cole also argues that somehow his trial counsel was ineffective for failing to discover and present evidence of Cole's bizarre behavior while in prison after being convicted of Brianna's murder. See Dkt. # 16 at 99, 104. This argument obviously fails as such evidence was not even in existence at the time of his trial.

Upon careful review of the mitigating evidence that Cole contends should have been discovered and presented, the Court cannot reasonably conclude that the additional evidence would have made a difference in the sentencing. See Schriro v. Landrigan, 550 U.S. 465, 480-81 (2007). Although the mitigation evidence, if discovered and presented, may have provided additional insight into Cole's substance abuse problems and mental illness and his family history of the same,[16] this Court does not find that there is a reasonable probability that its introduction would have caused the jury to decline to impose the death penalty. Nor does the failure of trial counsel to discover and present this evidence undermine the Court's confidence in the jury's determination of the sentence. The jury found two aggravating circumstances: (1) that Cole had been previously convicted of a felony involving the use or threat of violence to the person; and (2) that the murder was especially heinous, atrocious, or cruel. The testimony of the witnesses Cole claims should have testified during the second stage of his trial primarily focuses on Cole's family history of mental illness and substance abuse. The testimony of Cole's son that he would like to get to know his father was

---

[16]    The Court does not believe that evidence of Cole's brothers' mental retardation would be particularly mitigating or relevant, since there is no allegation that Cole is mentally retarded or otherwise suffered from disabilities relating to below-average intelligence.

51

somewhat duplicative of other testimony that was presented that Cole's life had value to his family. None of the proffered testimony would have supported the notion that the murder of Brianna was not committed in a heinous, atrocious, or cruel manner. Nor would the testimony have negated or explained his prior violent felony involving child abuse. The proffered evidence was not likely to greatly "humanize" Cole any more than the mitigating evidence that was actually presented at his trial, which showed that Cole himself suffered from mental health issues, was an alcoholic, "huffed" gasoline with his stepbrother, and was sexually abused as a child. Accordingly, the failure of Cole's counsel to present the mitigating evidence described did not result in prejudice under Strickland.

Because Cole's ineffective assistance of trial counsel claim has no merit, his ineffective assistance of appellate counsel claim for failing to raise trial counsel's ineffectiveness fails also. See Cooks v. Ward, 165 F.3d 1283, 1296-97 (10th Cir.1998) (counsel's failure to pursue nonmeritorious issues on appeal does not constitute ineffective assistance).

Cole has failed to demonstrate that the OCCA's rejection of Cole's ineffective assistance of trial and appellate counsel claims was contrary to, or an unreasonable application of, Strickland. See 28 U.S.C. § 2254(d)(1). Nor has he shown that the OCCA's decision was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(2). Habeas relief is denied as to this claim.

## V. Ineffective assistance of appellate counsel (ground five)

In ground five, Cole claims that his appellate counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights because (1) appellate counsel failed to conduct further investigation into Cole's mental capacity and present additional evidence to support his claim that the trial court erred in denying his request for a continuance (see ground three supra),

and (2) appellate counsel failed to raise the claim that Cole was incompetent to stand trial (see ground one supra).

The right to effective assistance of counsel extends to a felony defendant's "first appeal of right." See Evitts v. Lucey, 469 U.S. 387, 396 (1985). When analyzing a claim of ineffective assistance of appellate counsel, the Tenth Circuit has recognized that the petitioner must satisfy the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003).

The OCCA addressed these claims when it denied Cole's application for post-conviction relief. See Order Denying Application for Post-Conviction Relief at 5-6, Case No. PCD-2005-23.

## A.     Failure to investigate brain damage

Cole alleges that his appellate counsel was ineffective for failing to develop evidence to support Cole's allegation of organic brain damage. As discussed in ground three above, a few weeks prior to trial an MRI was done of Cole's brain, which revealed an abnormality. Defense counsel thereafter moved for a continuance of the trial date in order to pursue this newly discovered, potential mitigating evidence. The trial court denied the requested continuance and trial counsel did not develop any additional evidence for trial based on the MRI. On direct appeal, counsel failed to develop or present any further evidence relating to Cole's allegation of brain damage to support the claim that the trial court erred in denying the requested continuance. Cole argues that, under the circumstances created by the denied continuance, his appellate counsel should have picked up where trial counsel left off and retained an appropriate expert such as a neurologist or neuroradiologist to throughly assess the significance of the evidence. He claims a properly credentialed expert would have been able to review and interpret the MRI and other relevant mental health evidence, and then

53

assess the extent of Cole's brain damage and its effect on his cognitive and behavioral functioning. He also argues that his appellate counsel further failed to conduct any independent investigation into Cole's mental capacity in order to provide further anecdotal or other background evidence to support his claim. He argues that these omissions denied his constitutional right to effective appellate counsel.

As a preliminary matter, the Court notes that Cole again primarily relies on the Declaration of Ruben C. Gur, Ph.D., see Dkt. # 16, Ex. 32, to support this claim. As discussed in ground three above, Dr. Gur stated that "individuals like Mr. Cole who suffer from this amount and type of damage are more likely to act violently" and concluded that his brain damage in all likelihood existed at the time of the offense. Id., ¶¶ 5, 6. It is undisputed that Dr. Gur's declaration was not presented to the OCCA when it considered this claim in Cole's post-conviction proceeding and that it was developed and presented for the first time in these habeas proceedings. See id., ¶ 3. As discussed previously, review under § 2254(d) is limited to the record that was before the OCCA when it adjudicated the claim on the merits. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Therefore, the Court will not consider Dr. Gur's declaration or any other evidence submitted for the first time in federal court in adjudicating this claim.

Upon review of the record, the Court concludes that Cole cannot establish that there is a reasonable probability that, but for appellate counsel's alleged failure to investigate and develop evidence relating to his MRI and brain damage, the result of his appeal would have been different. See Strickland, 466 U.S. at 694. Thus, Cole's ineffective assistance of appellate counsel claim fails on the second prong of Strickland. Cole has not demonstrated that if his appellate counsel had sought to develop the MRI/brain damage evidence any further he would have been able to procure

compelling mitigating evidence in the form of favorable expert analysis of the MRI. Aside from the declaration of Dr. Gur which the Court cannot consider, Cole provides no other evidence supporting his allegation that appellate counsel would have been able to retain an expert to provide favorable analysis of the MRI had appellate counsel engaged in independent investigation. Even considering the evidence that Cole attached to his post-conviction application (but did not attach to his habeas petition), namely the letters from John D. Hastings, M.D. and Matthew Powers, M.D., both of whom reviewed the MRI, Cole still has not established that he would have accomplished his purpose had the continuance been granted. Their review of the MRI indicated that the lesion was non-specific and "might be seen in multiple sclerosis, tumor, or small abscess." App. To Post-Conviction, Ex. 7, Case No. PCD-2005-23. Their letters did not in anyway link Cole's brain abnormality to his behavior at the time of the crime or otherwise provide an explanation for his mental illness described by other experts in the second stage of trial. This evidence is not particularly beneficial to Cole. Thus, Cole has not shown that, but for his appellate counsel's alleged failure to investigate brain damage evidence, the result of his appeal would have been any different. <u>Strickland</u>, 466 U.S. at 694. The OCCA's rejection of Cole's ineffective assistance of appellate counsel claim on this ground was not an unreasonable application of <u>Strickland</u>. 28 U.S.C. § 2254(d)(1).

**B.**     **<u>Failure to raise incompetency claim</u>**

Cole also asserts that his appellate counsel was constitutionally ineffective for failing to raise on direct appeal the claim that Cole was incompetent to stand trial. A claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal, although counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." <u>Smith v. Robbins</u>, 528 U.S. 259,

288 (2000)(citation omitted). A sufficiently meritorious omitted claim certainly can, by itself (or in relation to other issues that counsel did pursue), establish constitutionally deficient performance by appellate counsel. See Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004) (per curiam) (citing Cargle, 317 F.3d at 1202).

To properly assess an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, the Court must first "look to the merits of the omitted issue," Cargle, 317 F.3d at 1202 (citing Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001)). This Court has already evaluated and rejected in ground one above Cole's claim that he was incompetent to stand trial. Because the omitted issue is without merit, Cole's ineffective assistance of appellate counsel fails. The OCCA's rejection of this claim was not an unreasonable application of Strickland.

Cole has failed to establish that the OCCA's rejection of his ineffective assistance of appellate counsel claim was contrary to, or an unreasonable application of, established federal law. See 28 U.S.C. § 2254(d)(1). Habeas relief on Cole's ground five claim is denied.

## VI. Crime of child abuse murder lacks culpability requirement (ground six)

Cole argues that his sentence of death violates his constitutional rights under the Eighth and Fourteenth Amendments. He argues that, because child abuse murder is a general intent crime under Oklahoma law, it fails to provide a constitutionally adequate culpability requirement for the imposition of the death penalty. Dkt. # 16 at 119.

The OCCA summarily rejected this claim in Cole's direct appeal on the merits. See Cole, 164 P.3d at 1100. Respondent argues that the OCCA's rejection of the claim was not an unreasonable application of Supreme Court precedent.

Cole relies upon Enmund v. Florida, 458 U.S. 782 (1982), and Tison v. Arizona, 481 U.S. 137 (1987). "The central concern of the Enmund/ Tison line of Supreme Court cases is whether a conviction for felony murder contains an adequate determination of defendants' culpability such that imposition of the death penalty does not violate the Eighth Amendment's prohibition against cruel and unusual punishment."  Workman v. Mullin, 342 F.3d 1100, 1110 (10th Cir. 2003).

In Enmund, the Supreme Court reversed the death sentence of a defendant who waited outside while his accomplices committed a murder during an armed robbery of a home and subsequently drove the getaway car. The Supreme Court held that because the defendant had not himself killed, attempted to kill, or intended to kill the victims his "degree of participation in the murders was so tangential that it could not be said to justify a sentence of death." Tison, 481 U.S. at 148 (describing Enmund's ruling) (emphasis in original). In Tison, the Supreme Court made it clear that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement." Id. at 158. Thus, the Tenth Circuit has stated that, in order to constitutionally impose a death sentence under Enmund and Tison, "the State must prove that the petitioner himself killed or attempted to kill the victim, intended that a killing take place or that lethal force be employed; or that the petitioner was a major participant in the felony underlying a felony murder conviction and acted with reckless indifference to human life." Johnson v. Gibson, 254 F.3d 1155, 1162 (10th Cir. 2001). Both Enmund and Tison involved felony murder convictions.

In the present matter, Cole was convicted of child abuse murder, not felony murder. In order to convict Cole of first-degree child abuse murder under Oklahoma law, the jury found that he willfully or maliciously used unreasonable force on Brianna, and that she died as a result. Okla. Stat.

tit. 21, § 701.7(c); see also O.R. Vol. III at 434, Instruction No. 10. The jury did not need to find that Cole intended to kill the child. Cf. Malicoat v. State, 992 P.2d 383, 395 (Okla. Crim. App. 2000) (child abuse murder is a general intent crime).

The Tenth Circuit's decision in Workman v. Mullin, 342 F.3d at 1114, is dispositive of this issue. In Workman, the circuit court rejected an Enmund/Tison challenge arising out of an Oklahoma conviction for first-degree child abuse murder. The Workman court held "that the constitutional check that Enmund, and certainly that Tison, represent is satisfied in felony murder cases in which the defendant actually killed his victim." Id. Examining the record, the court noted that the petitioner in that case "was convicted of child abuse murder in which a jury determined that he had actually killed [the victim] . . . [and] was found to have purposefully inflicted the[ ] blows." Id. at 1114-15. Thus, the court found that "no further analysis is required by a court under Enmund or Tison because the Eighth Amendment is not offended in this case of felony murder after the jury's finding that Workman actually killed his victim." Id. at 1115; see also Malicoat v. Mullin, 426 F.3d 1241, 1254-55 (10th Cir. 2005) (also rejecting Enmund/Tison challenge to a death sentence imposed as a result of Oklahoma child abuse murder conviction).

As in Workman, the jury in Cole's case found he actually killed his victim by willfully and maliciously using unreasonable force upon her. See O.R. Vol. III at 434, Instruction No. 10. As such, because Cole actually killed his victim, the culpability requirements of Enmund and Tison are met and no further analysis of Cole's intent or culpability is necessary. See Workman, 342 F.3d at 1114.

For the reasons discussed above, Cole is not entitled to relief on his ground six claim. He has failed to demonstrate the OCCA's decision is contrary to, or an unreasonable application of, Enmund or Tison. See 28 U.S.C. § 2254(d)(1).

## VII.    Admission of gruesome autopsy photographs (ground seven)

Cole claims that the introduction of certain photographs denied him a fundamentally fair trial and sentencing proceeding in violation of his due process rights under the Fourteenth Amendment and his right to a reliable sentencing proceeding under the Eighth Amendment. Specifically, Cole claims that four autopsy photographs (State's Exs. 6, 7, 8, 9), introduced during first stage proceedings and by incorporation of the evidence in second stage proceedings, denied him a fundamentally fair trial. See Dkt. # 16 at 123-24. Cole claims the photographs admitted in first stage proceedings were not relevant to prove the charged offense. He claims the photographs introduced during second stage proceedings had no probative value in relation to the heinous, atrocious, and cruel aggravating factor. Respondent argues that the OCCA's decision on this issue was not an unreasonable application of Supreme Court precedent.

In denying Cole's claim on direct appeal, the OCCA found as follows:

> The issue of gruesome photographs has been discussed by this Court in case after case, and the issues relating thereto are well known. As we have said before, "Gruesome crimes result in gruesome pictures." Patton v. State, 1998 OK CR 66, ¶ 60, 973 P.2d 270, 290. On the other hand, post-autopsy photographs have often been found to be inadmissible by this Court on the basis that their probative value was substantially outweighed by prejudicial effect due to their shocking nature and tendency to focus on the handiwork of the medical examiner, rather than the defendant. See, e.g., Wilson v. State, 1998 OK CR 73, ¶ 92, 983 P.2d 448, 468; Sattayarak v. State, 1994 OK CR 64, ¶ 8, 887 P.2d 1326, 1330; Oxendine v. State, 1958 OK CR 104, ¶¶ 6–8, 335 P.2d 940, 942–43.

> Here, the photos at issue fall squarely on the line between what is relevant and what is prejudicial. The photos at issue are extremely grotesque, the sort of pictures that we would all like to avoid in our lives. However, this was an extremely

brutal crime, one that can fairly be described as a grown man breaking a helpless child in half. The nature of those injuries, unlike most first degree murders, was hidden inside the child's body. Indeed, medical personnel attempting to rescue the child's life were unaware of the precise nature of the injury until an autopsy was performed.

The photos did not show crude Frankenstein stitching, but instead focused on close up shots of the victim's wounds, i.e., the broken spine and separated aorta, after the medical examiner had done what was necessary in order to reveal them. We think two of these shots, rather than three, would have sufficed, given the fact that Appellant admitted being the cause. One photo (State's Exhibit 7) focused on the injury to the spine while another (State's Exhibit 9) focused on the aorta. State's Exhibit 8 was fairly redundant as to the injuries and gruesomeness. But we also note that these three shots were clearly preferable to others that were curiously proffered by the State, but denied admission by the Court.

Still, the State had to prove a willful or malicious use of unreasonable force by the defendant, and therefore it was important for the jury to consider fully the force applied by Appellant's actions. When speaking of malice and unreasonableness, pictures are worth much more than words. We find, therefore, that the trial judge did not abuse his discretion in admitting two of these photos in the first stage. Moreover, we find a lack of first stage prejudice regarding the admission of the other photo, given Appellant's admissions of responsibility. We withhold judgment, however, regarding what inflammatory impact this additional photo may have had on sentencing until our review of proposition twelve, cumulative error, and later in our mandatory sentence review.

Cole, 164 P.3d at 1096-97 (footnote omitted). In its cumulative error review, the OCCA found that the admission of State's Ex. 8 in combination with other errors did not have any impact on Cole's sentencing. Id. at 1101. In the omitted footnote, the Court found that "[t]he fourth photo, a picture of Brianna's face and upper torso after she had died but before the autopsy began [State's Ex. 6] had no particular relevance and should not have been admitted. But at the same time, the photo was not really prejudicial either, and we decline to grant any relief with respect to it." Id. at 1097 n.8.

Habeas review is not available to correct state law evidentiary errors. Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (habeas review is limited to violations of constitutional rights)). This Court is concerned only with the

possible infringement of federal constitutional rights. Accordingly, the Court will review the trial court's evidentiary rulings only insofar as Cole's federal constitutional rights may have been impacted. In a habeas proceeding claiming a denial of due process, a court will not question the evidentiary rulings of the state court unless the petitioner can show that, because of the trial court's actions, his trial, as a whole, was rendered fundamentally unfair. Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991); see also Spears v. Mullin, 343 F.3d 1215, 1226 (10th Cir. 2003) (quoting Romano v. Oklahoma, 512 U.S. 1, 12 (1994)) ("When, as here, habeas petitioners challenge the admission of photographic evidence as violative of the Constitution, this court considers 'whether the admission of evidence . . . so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process.'"). There are no clearly definable legal elements to the fundamental fairness inquiry; thus, we look to the effect of the admission of the photographs within the context of the entire proceedings. See Spears, 343 F.3d at 1226 (citing Duckett v. Mullin, 306 F.3d 982, 988, 999 (10th Cir. 2002)). As part of the fundamental fairness inquiry, the Court looks to the strength of the evidence against the petitioner. Id. With regard to the sentencing stage, the Court considers the aggravating evidence against the petitioner as compared to the mitigating evidence. Id. The Court then contemplates whether admission of the photographs could have given the prosecution an unfair advantage. Id. Ultimately, the Court considers whether the jury could judge the evidence fairly in light of the admission of the photographs. Id.

This Court agrees with the OCCA that State's Ex. 7, showing the injury to Brianna's spine, and State's Ex. 9, showing her torn aorta, were relevant to show the nature of Brianna's injuries. The OCCA recognized that post-autopsy photographs are often irrelevant as they tend to

demonstrate only the medical examiner's work.  Cole, 164 P.3d at 1096; see also Wilson v. Sirmons, 536 F.3d 1064, 1116 (10th Cir. 2008) ("We agree with the OCCA that the post-autopsy photograph was irrelevant, as it only demonstrated the medical examiner's work, and not any injuries from the defendant's attack.").  However, this is not the case here.  The cause of Brianna's death was not readily apparent or visible externally.  Thus, these photographs show Cole's handiwork as well as the medical examiner's.  These admittedly gruesome photographs from the autopsy were necessary to show the cause of Brianna's death and nature of her injuries. The photographs were appropriately supported by the medical examiner's testimony.  Tr. Vol. VII at 12-13, 21.  These photographs also support the medical examiner's testimony that a great amount of force was necessary to break the spine. Tr. Vol. VII at 14.  See Wilson v. Sirmons, 536 F.3d 1064, 1114-15 (10th Cir. 2008) (gruesome photographs were relevant to case). Likewise, with respect to the second stage, these photographs demonstrate the heinous, atrocious, and cruel nature of the murder.  State's Ex. 8 was likewise relevant as it also showed the nature of the injuries, but was somewhat cumulative, as recognized by the OCCA.  Despite their graphic nature, it was not unreasonable for the OCCA to determine that the relevance of the photos outweighed their prejudicial effect with respect to both stages of Cole's trial.

This Court likewise agrees with the OCCA that the admission of State's Ex. 6 was error. This photo of Brianna's face and torso after her death had no relevance to either stage of the proceeding.  However, considering the strength of the evidence against Cole, it was not unreasonable for the OCCA to determine that it was not prejudicial.

The admission of the four photographs did not deny Cole a fundamentally fair trial or sentencing proceedings.  With respect to the first stage of the trial, Cole admitted to inflicting

Brianna's injuries that caused her death. Strong evidence was presented that the injuries required unreasonable force. There was no question of guilt. Similarly, with respect to the sentencing stage, the prosecution introduced evidence regarding Cole's prior child abuse conviction and the jury found that the murder was heinous, atrocious, and cruel.[17] It is not likely that the presentation of the photographs gave the prosecution an unfair advantage. Further, the jury likely would have been able to consider the evidence fairly even in light of the admission of the photographs in either stage of Cole's trial. See Spears, 343 F.3d at 1226.

The Court concludes that the OCCA's determination that the introduction of the photographs during first and second stage proceedings did not deny Cole a fundamentally fair trial was not unreasonable. Cole has not established that the OCCA's determination of this issue was contrary to, or unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). Cole is denied habeas relief on his ground seven claim.

---

[17]     Cole's reliance on Spears to argue that the admission of the photographs rendered the sentencing stage of his trial fundamentally unfair is misplaced. In Spears, the Tenth Circuit determined that the admission of photographs depicting injuries that occurred, or likely occurred, after the victim lost consciousness to support the heinous, atrocious, or cruel aggravator rendered the petitioner's sentencing proceeding fundamentally unfair. 343 F.3d at 1227-28. The circuit court ruled that, because the injuries depicted occurred after the victim lost consciousness, those injuries were not relevant to the aggravator, which requires conscious suffering. Id. Important to the Spears ruling was the fact that the prosecution waited until the second stage to introduce the photographs. The court recognized that the photographs were the primary aggravating evidence and noted, "By contrast, the State introduced comparatively innocuous photographs at the first stage, seeming to deliberately await the second stage to present the more gruesome photographs solely for their shock value." Id. Unlike in Spears, the challenged photographs here (State's Exs. 7-9) show injuries that occurred while Brianna was conscious and, thus, do support the heinous, atrocious, or cruel aggravator. Moreover, these photographs were introduced in the first stage and were relevant to show the nature of the injuries and cause of death.

## VIII.   Prosecutorial misconduct (ground eight)

For his ground eight claim, Cole alleges that the prosecutor's repeated references to God and religion infected both stages of his trial and violated his constitutional rights.  Cole argues that these religious references did nothing more than seek sympathy for the minor decedent and improperly injected victim impact evidence into the first stage of trial in violation of his right to a fair trial. Cole also argues that the prosecutor's statements violated his First Amendment rights and that his trial counsel was ineffective for failing to object to the challenged statements.  See Dkt. # 16 at 129-40.

Cole first challenges the prosecutor's repeated references during guilt stage opening and closing arguments to the timing of Brianna's death with respect to Christmas:

- "Brianna Victoria Cole was born March 27th of 2002 and five days, five days before her first Christmas she was dead.  Four days before her first Christmas she was laying on an autopsy table." Tr. Vol. VI at 57.

- "Four days before Christmas, Dr. Sibley will testify that he performed an autopsy of this little girl." Id. at 60.

- "That this little girl could not even make it to her first Christmas." Id. at 63.

- "There is no Oklahoma statute that says you have to buy your child a birthday present. Or in Brianna's case, a Christmas present." Tr. Vol. VII at 43.

Cole argues that the prosecutor continued with his religious overtones during his guilt stage closing argument:

- "But if you look at any mother-father, mother, father, grandparent, guardian that is blessed enough to have a little baby that is perfect, what would they give for that child?" Tr. Vol. VII at 42-43 (emphasis added).

- "Mr. Cole received one of the most precious gifts that anyone can receive. . . . There's no better gift than a healthy child. . . . I will not ask you what type of man would do this to a baby. . . . God entrusted him with that little girl and what did he do with that trust?" Id. at 48.

Cole also argues that an anecdote told by the prosecutor during the sentencing stage constituted misconduct:

> I remember once, after going on a long trip -- and my older two children were 14 months apart. . . . And then I got out of the shower, I laid down and I know just as my head hit the pillow I heard one of them cry, you know. So I got up and my dad looks at me and he says, he goes, you know what a baby's cry is? . . . . And he said a baby's cry is God asking you to help them.

Tr. Vol. VIII at 144-45.

The Supreme Court has established rules that govern a petitioner's prosecutorial misconduct claims. "Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Le v. Mullin, 311 F. 3d 1002, 1013 (l0th Cir. 2002) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). To determine whether a trial is rendered fundamentally unfair, the court examines the entire proceeding, "including the strength of the evidence against the petitioner . . . as well as [a]ny cautionary steps-such as instructions to the jury-offered by the court to counteract improper remarks." Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006) (alteration in original) (internal quotation marks omitted). "'[I]t is not enough that the prosecutors' remarks were

undesirable or even universally condemned.'" Id. (alteration in original) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Id. Additionally, in United States v. Young, 470 U.S. 1, 11 (1985), the Supreme Court held that a "conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."

When a prosecutor's comment or argument deprives a petitioner of a specific constitutional right, "a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990) (citing DeChristoforo, 416 U.S. at 643). However, not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation. See Caldwell v. Mississippi, 472 U.S. 320, 338 (1985) (plurality opinion).

The OCCA denied relief on this claim in Cole's direct appeal and stated as follows:

Appellant points to four brief examples from the nine-day trial. First, during first stage opening statement the prosecutor made two references about the death occurring just prior to what would have been Brianna's "first Christmas." No objection was made to the comment, and we find no error, plain or otherwise. The occurrence of this murder on the week before Christmas is a tragic circumstance that is instantaneously obvious to everyone, this Court included. Certain facts simply cannot be disentangled from a criminal trial on the basis that they also evoke sympathy.

Next, Appellant points to first stage closing arguments, when the prosecutor argued that children are a blessing, one that most parents, grandparents, etc. would give anything for and value highly. No objection was made, however, and for good reason. These comments fall within the wide latitude of discussion permitted both the state and the defense in closing argument. Short v. State, 1999 OK CR 15, ¶ 72, 980 P.2d 1081, 1104.

Next, Appellant points to brief comments at the end of first stage closing arguments when the prosecutor argued that children are a precious gift, entrusted to parents by God. Again, no objection was raised, and we find no plain error. Simpson v. State, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 692–93. It is probably safe to say that most Americans, probably a strong majority, would agree with this statement wholeheartedly. While the statement is perhaps objectionable, as possibly injecting God into the mix and for its intentional melodrama, it does not, standing alone, amount to plain error.

Appellant's last example, which occurred during the prosecutor's penalty phase closing, concerns the prosecutor's story of how his father told him that a "baby's cry is God asking you to help them," along with a later reference to an earlier unobjected to description of the victim as God's gift. No objections were made by defense counsel. Again, we find no plain error. While the sentimental statement[s] above were, in our opinion, slightly beyond that "wide latitude" given to parties to discuss the evidence and make reasonable arguments therefrom, Appellant's trial or sentencing was not rendered unfair by these last remarks, or when all of the examples are considered together. The record indicates that Appellant was himself responsible for injecting religion into this trial by his bizarre behavior, so much so that his counsel, at times, had to do their best to convince jurors that Appellant was simply a devout man, rather than a troubling zealot. In context, then, the prosecutors' brief arguments about God were no more than an adversarial balance to Appellant's positions on religion.

Cole, 164 P.3d at 1101.

Cole argues that habeas relief is warranted because the OCCA reviewed each instance of alleged misconduct in isolation rather than in the aggregate as required by law. See Le, 311 F.3d at 1021; see also Young, 470 U.S. at 11. To the contrary, the OCCA clearly held that "Appellant's trial or sentencing was not rendered unfair by these last remarks, or when all of the examples are considered together." Cole, 164 P.3d at 1101. Thus, relief is not warranted on this basis.

## A.  **Fundamental fairness inquiry**[18]

The OCCA's conclusion that the prosecutor's comments regarding the proximity of Brianna's death to Christmas constituted "no error, plain or otherwise" was not unreasonable. <u>Cole</u>, 164 P.3d at 1101. "The prosecutor is allowed a reasonable amount of latitude in drawing inferences from the evidence. . . ." <u>Duvall v. Reynolds</u>, 139 F.3d 768, 795 (10th Cir. 1998) (citation omitted). It is undisputed that Brianna died shortly before Christmas and this would have been apparent to the jurors. Moreover, the prosecutor's references to the Christmas holiday did not amount to injecting religion into the proceedings – the prosecutor made no specific reference to "Christ's birth" as alleged by Cole, and the holiday has a recognized secular significance in our society.

The OCCA's determination that the comment during guilt stage closing argument that a person would be "blessed" to have a perfect baby falls within "the wide latitude of discussion permitted both the state and the defense in closing argument" was not unreasonable. <u>See</u> <u>Cole</u>, 164 P.3d at 1101. This simple statement is hardly objectionable and did not in any way inject religion into the proceedings.[19]

Cole also points to brief comments at the end of first stage closing arguments when the prosecutor argued that children are a precious gift, entrusted to parents by God. The OCCA concluded that this statement was "perhaps objectionable, as possibly injecting God into the mix and

---

18      Cole separately argued that the prosecutor's improper statement injected victim impact evidence into the first stage of trial. <u>See</u> Dkt. # 16 at 158. However, this allegation is subject to the same fundamental fairness inquiry, <u>see</u> <u>Duckett</u>, 306 F.3d at 991-92, and is considered here.

19      The dictionary entry for "blessed" includes the following definitions: "characterized by happiness or good fortune" and "bringing great happiness or good fortune." <u>Collins English Dictionary - Complete & Unabridged</u> "blessed." (HarperCollins Publishers 10th ed. 2009).

for its intentional melodrama" but did not amount to plain error. <u>Cole</u>, 164 P.3d at 1101. Finally, the OCCA ruled the prosecutor's story of how his father told him that a "baby's cry is God asking you to help them," was not proper, but concluded that this "sentimental" remark did not constitute plain error. <u>Id.</u> The OCCA then ruled that the examples of prosecutorial misconduct when considered all together did not render Cole's trial or sentencing fundamentally unfair. <u>Id.</u> The OCCA's conclusion regarding these two examples was not unreasonable. The Court "do[es] not condone comments encouraging the jury to allow sympathy, sentiment, or prejudice to influence its decision." <u>See</u> <u>Duvall</u>, 139 F.3d at 795. Nevertheless, after reviewing the entire record, the Court concludes that these comments did not affect the outcome of Cole's trial or sentencing. The facts of the crime itself invoke sympathy even absent prosecutorial argument. <u>See</u> <u>id.</u> Although these two prosecutorial remarks were improper, the argument, viewed in light of the trial as a whole, did not result in a fundamentally unfair proceeding.

This Court concludes that the OCCA's determination that neither Cole's trial nor his sentencing was rendered fundamentally unfair by any improper prosecutorial comments was not contrary to, or an unreasonable application of, Supreme Court precedent. <u>See</u> 28 U.S.C. § 2254(d)(1).

**B.     <u>Specific constitutional right analysis</u>**

Cole argues that even if the prosecutor's statements did not render his trial fundamentally unfair, the religious content of the statements infringed on his specific constitutional rights under the First Amendment. Dkt. # 16 at 135. As stated above, when prosecutorial misconduct infringes upon a specific guarantee of the Bill of Rights, a habeas petitioner need not demonstrate that his entire trial was rendered fundamentally unfair. <u>Mahorney</u>, 917 F.2d at 472. Respondent argues that

Cole's First Amendment claim is unexhausted and, thus, should be procedurally barred. However, this Court may deny an unexhausted claim on the merits where it is more efficient to do so. See 28 U.S.C. § 2254(b).

Cole claims that the religious arguments advanced by the prosecutor acted to obliterate the separation between church and state in violation of Cole's rights under the First Amendment. As explained above, only two of the prosecutor's comments constituted improper argument and those contain only a short reference to "God" – there was no pervasive religious content in the prosecutor's arguments. Cole provides no authority that argument by a prosecutor that contains references to "God" infringes upon a criminal defendant's First Amendment rights and the Court is aware of none. Cole has failed to show that the prosecutor's statements violated his First Amendment rights.

### C.     Ineffective assistance of trial counsel

Cole argues that his trial counsel's failure to object to any of the above prosecutorial statements resulted in ineffective assistance of trial counsel in violation of his Sixth and Fourteenth Amendment rights. This claim was raised in Cole's direct appeal to the OCCA. Original Brief for and on Behalf of Appellant Benjamin Robert Cole at 55-56 n.10, Case No. D-2004-1260. However, the OCCA failed to address the claim on the merits. Since there is no state court decision on the merits, this Court will review the claim de novo. See Cannon v. Gibson, 259 F.3d 1253, 1272-73 (10th Cir. 2001).

As noted above, to prevail on an ineffective assistance of counsel claim, a petitioner must show: (1) that counsel's performance was deficient; and (2) that such deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). If Cole is unable to

show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Id. at 700.

Cole's ineffective assistance of counsel claim fails because he cannot establish that he was prejudiced by his trial counsel's purported errors in failing to object to the prosecutor's statements. To establish sufficient prejudice, Cole must show that his trial counsel's failure to object prejudiced his defense, to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 As discussed above, only two of the statements that Cole challenges were improper. Further, this Court has already determined that "after reviewing the entire record, the Court concludes that these comments did not affect the outcome of Cole's trial or sentencing." See discussion part X, subpart A, supra. Because the prosecutor's improper statements did not change the result of the proceedings, Cole cannot establish he was prejudiced by his counsel's failure to object to them. Thus, Cole's ineffective assistance of counsel claim fails.

Cole has failed to show that the OCCA's determination of this issue was contrary to, or an unreasonable application of, Supreme Court precedent or that he is otherwise entitled to habeas relief as a result of prosecutorial misconduct. Cole is denied habeas corpus relief on his ground eight claim.

### IX. Heinous, atrocious, or cruel aggravator (grounds nine, ten, eleven, and twelve)

In ground nine of his petition, Cole claims that the trial court's failure to instruct the jury that it must find "conscious physical suffering" beyond a reasonable doubt prior to concluding that the murder was "heinous, atrocious, or cruel" deprived him of his rights to a fair trial and reliable

sentencing proceeding under the Sixth, Eighth, and Fourteenth Amendments. Dkt. # 16 at 141. Cole, in ground ten, claims the evidence was insufficient to support this aggravating circumstance. Id. at 145. And finally, in grounds eleven and twelve, he claims that this aggravating circumstance is unconstitutionally vague and overbroad, thus violating his Eighth and Fourteenth Amendments rights. Id. at 150, 154.

The OCCA denied Cole's challenges to the heinous, atrocious, or cruel aggravator on the merits in Cole's direct appeal. See Cole, 164 P.3d at 1097-1100.

## A.    Instructional error (ground nine)

Cole claims that the jury instruction given on the heinous, atrocious, or cruel aggravator was constitutionally inadequate because the jury instruction did not include the "conscious suffering" requirement imposed by the Oklahoma courts. Thus, he claims that the instruction was vague and failed to channel the sentencer's discretion.

The challenged instructions in Cole's sentencing proceeding provided in pertinent part: "The phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse." O.R. Vol. III at 461, Instruction No. 5.

In rejecting this claim, the OCCA explained:

> In proposition six, Appellant claims his jury was given an erroneous instruction regarding the "heinous, atrocious, or cruel" aggravating circumstance which rendered his sentencing proceeding constitutionally invalid. That is, Appellant received an older version of the "especially heinous, atrocious, or cruel" instruction, rather than the modified version announced in DeRosa v. State, 2004 OK CR 19, ¶ 96, 89 P.3d 1124, 1156. . . .

> The first question raised above was previously answered by this Court in Browning v. State, 2006 OK CR 8, ¶ 53, 134 P.3d 816, 844. There, we noted that in

DeRosa, "to forestall any such claim," we had specifically stated otherwise, then quoted the following DeRosa language:

> This instruction does not change any of the legal requirements of the "heinous, atrocious, or cruel" aggravating circumstance as it has existed up until this time.... This opinion should not be interpreted as a ruling that the former uniform instruction was legally inaccurate or inadequate, and this Court does not hold thus. Hence cases in which the former instruction has been used and applied are not subject to reversal on this basis. Such cases will be evaluated in the same manner as they have been in the past.

Browning, 2006 OK CR 8, ¶ 53, 134 P.3d at 844. As we stated in Rojem v. State, 2006 OK CR 7, ¶ 70–71, 130 P.3d 287, 301, "[T]he instruction more fully informs and acts as a form of insurance. But this does not mean the former instruction has suddenly become unconstitutional."

. . . .

We acknowledge the DeRosa instruction is an improved version of the former instruction and that we mandated its use in capital trials approximately six months prior to the time Appellant's jury received its instructions. But every mistake in a capital trial does not amount to reversible error. As we have stated before, no criminal trial is perfect. Our adversarial system grants both sides an advocate to prove their case, to urge their positions, to prevent the opposing side from trampling on their rights. A capital trial requires thousands of decisions, maneuvering through law and paperwork and witnesses and evidence on a daily basis. Here, the collective failure to read the latest case handed down on the instruction for this particular aggravating circumstance—an instruction that had yet to appear in the modified OUJI instructions—was a mistake, but the possible impact on the fairness of Appellant's trial was, in our opinion, slight at best. Because the former instruction is constitutionally acceptable, we cannot grant relief on this issue, standing alone. . . .

Cole, 164 P.3d at 1097-98.

Generally, "[a] habeas petitioner who seeks to overturn his conviction based on a claim of error in the jury instructions faces a significant burden. The question in such a collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002) (internal quotation

marks and citation omitted).  To be acceptable under the Eighth Amendment, the aggravating circumstance must furnish a sentencer with a principled means of guiding its discretion. <u>See</u> <u>Maynard v. Cartwright</u>, 486 U.S. 356, 361-64 (1988). The Tenth Circuit has routinely upheld the constitutionality of the heinous, atrocious, or cruel aggravator so long as it includes the "torture or serious physical abuse" limitation. <u>See, e.g.</u>, <u>Wilson v. Sirmons</u>,  536 F.3d 1064, 1108 (10th Cir. 2008); <u>Workman v. Mullin</u>, 342 F.3d 1100, 1115 (10th Cir. 2003); <u>Romano v. Gibson</u>, 239 F.3d 1156, 1176 (10th Cir. 2001); <u>Thomas v. Gibson</u>, 218 F.3d 1213, 1226 (10th Cir. 2000); <u>Medlock v. Ward</u>, 200 F.3d 1314, 1319 (10th Cir. 2000); <u>Moore v. Gibson</u>, 195 F.3d 1152, 1175-76 (10th Cir. 1999).

Cole's claim here is clearly foreclosed by <u>Wilson</u> and <u>Workman</u>. In each of those cases, the Tenth Circuit approved jury instructions that did not require a finding of "conscious physical suffering" but did require the jury to conclude that there was "torture or serious physical abuse." <u>Wilson</u>, 536 F.3d at 1108; <u>Workman</u>, 342 F.3d at 1116.  Thus, as in <u>Wilson</u> and <u>Workman</u>, the jury in Cole's trial was given guidance sufficient to channel its sentencing discretion.

Cole has failed to establish that the OCCA's determination of this issue was contrary to, or an unreasonable application of, Supreme Court precedent.  28 U.S.C. § 2254(d)(1). Cole is denied relief on his ground nine claim.

### B.    Insufficient evidence (ground ten)

Cole claims the evidence was insufficient to support the jury's determination that Brianna's murder was especially heinous, atrocious, or cruel. He also claims the Oklahoma court improperly reviewed the claim pursuant to <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), instead of the reasonable

hypothesis standard, thus resulting in a deprivation of a liberty interest in violation of his Fourteenth Amendment rights.

The OCCA's decision that the evidence was sufficient to support the heinous, atrocious, or cruel aggravator was not contrary to, or an unreasonable application of, clearly established Supreme Court law. The OCCA found as follows:

> We now turn to Appellant's second argument, that the evidence supporting this particular aggravator is insufficient. The evidence on this point is somewhat brief and circumstantial. Therefore, the question of whether the evidence admitted at trial was sufficient for the jury's finding that the murder was preceded by torture of the victim or serious physical abuse is one worthy of considerable deliberation.

> Appellant admitted his part in the crime, although his explanation was brief and lacking in helpful details. Appellant originally told authorities that Brianna was crying. Appellant's wife was doing laundry, so he went in to calm her, then went back to playing video games. Later, he described similar events, although on this occasion Appellant did not mention going in to calm his daughter. Rather, his wife noticed she didn't look right, and Appellant came in, looked her over, and said she was fine. Appellant even wrote a statement of this version of the events on the night of the murder, State's Exhibit 1.

> The next day, however, authorities first confronted Appellant with the medical examiner's ruling that the death was by homicide. Appellant's first words were, "How many years am I looking at?", thus demonstrating guilty knowledge. Appellant then told a revised version of his story—that he had attempted to get Brianna to stop crying, but she wouldn't; that he then grabbed his daughter by her ankles while she was lying on her stomach, then pushed her legs towards her head, until she flipped over. The testifying officer, while recounting Appellant's version of the events, physically demonstrates how this was accomplished, but our written record does not adequately reflect what occurred. But after he did this, Brianna stopped crying, at some point. Appellant's wife then returned to the room to find Brianna not looking right, and the rest of the events are similar to Appellant's previous explanations.

> Appellant also wrote out a statement after this interview, State's Exhibit 2. Therein, he states, "Brianna was crying so I went into the room to flip her over by grabbing her by the leg and flipping her over backwards." His wife did not reenter the room for ten to fifteen minutes after the fatal actions.

A fair reading of this record, however, is consistent with the State's description, that Appellant forcefully folded his daughter over until her spine snapped and her aorta tore.

The medical examiner testified that the autopsy revealed Brianna's lumbar spine, the lower part of her back, had been "broken and was splayed open in the front...." Also, Brianna suffered a "complete tear or what we call a transaction or laceration of the aorta ... an aorta which is completely torn into two pieces." The breaking of the spine "can really only occur when there's what we call hyperextension or a bending backward of the back such that it snaps open. And this doesn't occur with normal bending, but would only occur with ... abnormal bending backward of the back." The medical examiner further testified that the injury would take a "great amount of force and a deliberate force." And the aorta was not severed by the bone breaking. The medical examiner testified that it is elastic like a rubberband and had been stretched and stretched and stretched until it finally passed the breaking point. His conclusion, then, was that "we're talking about basically folding the back in half."

The medical examiner testified that this injury would "absolutely" be painful to a nine-month-old child. Moreover, he stated "[t]here's no unconsciousness [sic] would occur instantaneously ... It takes a little bit of time for enough blood to leave the vessels and not feed the brain before one becomes unconscious with an injury like that...." The medical examiner testified that the child was probably conscious for no more than 30 seconds after the spine snapped and that she probably died within two or three minutes.

And so, we have a crying child who is essentially snapped in two by great force at the hands of her father. She was alive when the painful force was applied and she continued to feel pain for another thirty seconds afterward until she went unconscious and then expired a few minutes later. The amount of force required was great and the stretching before the breaking of the spine and tearing apart of the aorta would have been protracted and not instantaneous.

The especially heinous, atrocious, or cruel aggravator requires a finding of torture or great physical abuse. In the DeRosa instruction, torture is further qualified as requiring the infliction of "great physical anguish or extreme mental cruelty" and "serious physical abuse" and "great physical anguish" are further qualified as requiring the victim to experience "conscious physical suffering."

While Brianna Cole suffered a fairly quick death, it was far from painless. Indeed, the pain was likely excruciatingly horrible. One cannot read this chilling record without concluding that Brianna suffered both torture and serious physical abuse at the hands of Appellant. She experienced a heinous death with great conscious suffering to a degree unlike "virtually all murders," thereby placing this

crime within the narrowed class of individuals for which capital punishment is a valid option. Accordingly, we find the evidence admitted at trial, when viewed in a light most favorable to the State, was sufficient to find beyond a reasonable doubt that the murder was especially heinous, atrocious or cruel.

Cole, 164 P.3d at 1098-99 (footnote and citations omitted).

The Tenth Circuit has not yet resolved whether a state court decision regarding sufficiency of the evidence should be reviewed as a legal question, fact question, or mixed question of law and fact. See Boltz v. Mullin, 415 F.3d 1215, 1230 (10th Cir. 2005); Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004). The circuit court has summarized the considerations as follows:

> Prior to AEDPA, we reviewed sufficiency of the evidence challenges de novo. See Moore v. Gibson, 195 F.3d 1152, 1176 (10th Cir. 1999). Under AEDPA, however, our standard of review is not clear. There is precedent in the Tenth Circuit that a sufficiency of the evidence challenge is a legal question and other precedent suggesting it is a question of fact. See Moore, 195 F.3d at 1176-177 (collecting cases on both sides). If we treat the issue as a legal determination, we look to 28 U.S.C. § 2254(d)(1) and determine whether the state court decision was contrary to or an unreasonable application of clearly established federal law. If, on the other hand, it is a factual question, we look to § 2254(d)(2) and decide whether the state court decision was an unreasonable determination of the facts in light of the evidence presented to the state court. Further, § 2254(e)(1) requires us to afford a presumption of correctness to a state court's factual findings.

Hale v. Gibson, 227 F.3d 1298, 1335 n.17 (10th Cir. 2000); see also Thomas v. Gibson, 218 F.3d 1213, 1227 (10th Cir. 2000) (using formulation and finding evidence insufficient to support aggravator); Medlock v. Ward, 200 F.3d 1314, 1321 n.6 (10th Cir. 2000) (using same formulation and finding evidence sufficient to support aggravator); Moore v. Gibson, 195 F.3d 1152, 1176-177 (10th Cir. 1999) (same). In Fields v. Gibson, the circuit court further explained:

> Thus, if we treat the issue as a legal determination under § 2254(d)(1) we ask whether the state court decision was contrary to or an unreasonable application of the "rational factfinder" standard. On the other hand, if we treat the issue as a factual determination under § 2254(d)(2) and (e)(1) we ask whether Fields has rebutted the presumption of correctness by showing, by clear and convincing evidence, that the state court's decision was an unreasonable determination of the facts. We have held,

however, that it is possible to avoid deciding what standard of review applies when the petitioner's claims are clearly meritless under either standard. <u>See</u> <u>Hale</u>, 227 F.3d at 1335 n.17 ("In this case, however, we do not determine which is the more appropriate analysis because Hale's claim lacks merit under either standard of review.") Here, too, we follow this approach because we believe that under either of these highly deferential standards Fields's claim fails.

277 F.3d 1203, 1220-21 (10th Cir. 2002).

As in <u>Fields</u>, Cole's claim fails under either standard. Under 28 U.S.C. § 2254(e)(1), the Court must afford the OCCA's factual determinations a presumption of correctness. <u>Boyd v. Ward</u>, 179 F.3d 904, 915 (10th Cir. 1999). The presumption of correctness can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Cole has failed to present clear and convincing evidence rebutting the OCCA's finding of sufficient evidence to support the heinous, atrocious, or cruel aggravator. Accordingly, this Court finds the OCCA's decision was not an unreasonable determination of the facts in light of the evidence presented.

In analyzing whether the OCCA's decision was a correct legal determination, the "appropriate standard of review is the 'rational factfinder' standard established in <u>Jackson v. Virginia</u> . . . ." <u>Lewis v. Jeffers</u>, 497 U.S. 764, 781(1990). The relevant habeas question under the <u>Jackson</u> standard is to ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the [aggravating circumstance] beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319; <u>see also</u> <u>Lewis</u>, 497 U.S. at 782 (considerations also apply to habeas review of state court's finding of aggravating circumstances). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Jackson</u>, 443 U.S. at 319. The Tenth Circuit has emphasized that, under <u>Jackson</u>, "review is 'sharply limited' and a court 'faced with a record of historical facts that supports

78

conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting Wright v. West, 505 U.S. 277, 296-97 (1992)). This Court's review is limited to deciding whether the OCCA's decision – that there was sufficient evidence to support a jury's finding of the heinous, atrocious, or cruel aggravator – was contrary to or an unreasonable application of Jackson. 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238 (10th Cir. 2003).

When applying the Jackson standard, this Court looks to Oklahoma law to determine the "substantive elements" of the aggravating circumstance. Under Oklahoma law, regarding the nature of the defendant's actions, the aggravator requires conduct that is "extremely wicked," "shockingly evil," "outrageously wicked and vile," "pitiless," "designed to inflict a high degree of pain" or involves "indifference to, or enjoyment of, the suffering of others." Revilla v. Gibson, 283 F.3d 1203, 1214-15 (10th Cir. 2002) (citing Alverson v. State, 983 P.2d 498, 516 (Okla. Crim. App. 1999)). Next, regarding the violence done to the victim, the heinous, atrocious, or cruel aggravator is properly found when the murder was "preceded by torture or serious physical abuse." Medlock v. Ward, 200 F.3d 1314, 1321 (10th Cir. 2000). The OCCA has determined that physical abuse requires evidence of conscious, physical suffering. Romano v. Gibson, 239 F.3d 1156, 1171 (10th Cir. 2001); see also Powell v. State, 906 P.2d 765, 779-80 (Okla. Crim. App. 1995) (recognizing that it is critical for the State to prove the victim's conscious physical suffering before death). According to the OCCA:

> To prove a murder was especially heinous, atrocious or cruel, the State must introduce competent evidence indicating the victim's death was preceded by torture or serious physical abuse, which may include the infliction of either great physical anguish or extreme mental cruelty. Perry v. State, 893 P.2d 521, 533-34 (Okl.

Cr.1995); <u>Booker v. State</u>, 851 P.2d 544, 548 (Okl.Cr.1993); <u>Battenfield v. State</u>, 816 P.2d 555, 565 (Okl.Cr.1991), cert. denied, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). To support a finding of serious physical abuse, the State must show the victim endured conscious physical suffering prior to death. <u>Stafford v. State</u>, 832 P.2d 20, 23 (Okl.Cr. 1992). As we stated in <u>Perry</u>, 893 P.2d at 534, it is critical the State prove the victim consciously suffered prior to death. Prosecutors have proved this aggravator by introducing evidence the victim suffered numerous defensive wounds indicating that the victim was conscious and attempted to fight off her attacker; statements from the defendant indicating the victim consciously suffered serious physical abuse or extreme mental cruelty prior to death; witness testimony that the victim was alive and conscious at the time the physical abuse was inflicted; or medical evidence that the victim was conscious during the infliction of serious physical injury. <u>Id.</u> and cases cited therein.

<u>Powell</u>, 906 P.2d at 779-80 (emphasis in original).

Additionally, the OCCA has stated that there are no "specific, uniform criteria, applicable to all murder cases, which would make the application of the 'heinous, atrocious or cruel' aggravator a mechanical procedure." <u>Robinson v. State</u>, 900 P.2d 389, 401 (Okla. Crim. App. 1995). "Rather, the examination of the facts of each and every case is necessary in determining whether the aggravator was proved." <u>Id.</u> Therefore, the Court must focus its inquiry on the particulars of this case, rather than this case's similarity to another, to resolve the sufficiency of the evidence claim supporting the "heinous, atrocious or cruel" aggravating circumstance. <u>See</u> <u>id.</u>

Initially, Cole claims that the OCCA applied the incorrect standard when it reviewed the sufficiency of the evidence to support this aggravator. Respondent points out that Cole failed to challenge the OCCA's application of <u>Jackson</u> in any state court proceeding and, thus, that aspect of Cole's claim in unexhausted for the purposes of federal habeas review. However, this claim can be easily denied on substantive grounds. Therefore, the Court will invoke its discretion to bypass complex issues of exhaustion and anticipatory procedural bar and deny this aspect of Cole's claim on the merits. <u>See</u> 28 U.S.C. § 2254(b). Cole, citing <u>Hicks v. Oklahoma</u>, 447 U.S. 343, 346 (1980),

contends that this claim, involving a state law error, is cognizable in federal habeas corpus because it resulted in a deprivation of a liberty interest in violation of his Fourteenth Amendment rights. This Court will assume without deciding that Cole's claim is cognizable in these habeas proceedings. Cole argues that the Oklahoma court found the Jackson standard inapplicable to challenges to aggravating circumstances in its holding in Lay v. State, 179 P.3d 615, 623 (Okla. Crim. App. 2008). To the contrary, in Lay, the Oklahoma court reviewed the sufficiency of two aggravating circumstances and utilized the Jackson standard in both. Id. at 624. The language Cole relies upon dealt with the jury instruction regarding the finding of the aggravating circumstance, not the standard of review. Clearly, the appropriate standard of review when determining the sufficiency of the evidence to support an aggravating circumstance is that utilized in Jackson. See Wilson v. Sirmons, 536 F.3d 1064, 1105 (10th Cir. 2008); Brown v. Sirmons, 515 F.3d 1072, 1088-89 (10th Cir. 2008); Hamilton v. Mullin, 436 F.3d 1181, 1194 (10th Cir. 2006); Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004). Thus, the OCCA utilized the proper standard of review and this aspect of Cole's claim fails on this basis.

In Cole's case, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the aggravator beyond a reasonable doubt. The OCCA went into great detail to analyze the conscious pain Brianna suffered as well as the other facts that show that the murder was heinous, atrocious, or cruel. The victim's death was undoubtedly preceded by serious physical abuse. The jury heard testimony from the medical examiner that Brianna's spine was broken and her aorta was stretched until it was completely torn into two pieces. See Tr. Vol. VII at 12-15. He testified that the breaking of the spine could not have occurred with normal bending but would take a "great amount of force and a deliberate force." Id. at 14. The

medical examiner testified that in order to lacerate the aorta, Cole had to "basically fold[] the back in half." Id. at 15. Thus, the crucial question "is whether Oklahoma adduced sufficient evidence from which a reasonable fact finder could have concluded beyond a reasonable doubt that [the victim] was conscious during some part of the [abuse]." Thomas v. Gibson, 218 F.3d 1213, 1227 (10th Cir. 2000) (footnote omitted). Cole's argument that there was no evidence of conscious physical suffering is unavailing. By Cole's own account, Brianna was conscious and crying when he went into her room "to flip her over by grabbing her by the leg and flipping her over backwards." State's Ex. 2. Thus, the evidence shows that Brianna was conscious when a great amount force was applied to bend her in half and break her back and tear apart her aorta, which the OCCA determined "would have been protracted and not instantaneous." Cole, 164 P.3d at 1098-99. Further, the medical examiner testified that the injuries would "absolutely" be painful to a nine-month-old child, that unconsciousness would not have occurred instantaneously, and that Brianna may have been conscious for as long as thirty seconds after the injuries were inflicted. Tr. Vol. VII at 21-22. Thus, the evidence shows that Brianna was conscious during the abuse, and then after the abuse was in "excruciatingly horrible" pain for another period of time until she lost consciousness. See Tr. Vol. VII at 26; see also Cole, 164 P.3d at 1098-99.

Under the "rational factfinder" test of Jackson, viewing all evidence and drawing all reasonable inferences in the light most favorable to the prosecution, the jury's finding of the heinous, atrocious, or cruel aggravator in Cole's case was reasonable. The evidence presented at Cole's trial was sufficient to fall within Oklahoma's narrowed scope of the heinous, atrocious, or cruel aggravator. Here, the OCCA concluded that the evidence supported torture and physical abuse with "great conscious suffering." Cole, 164 P.3d at 1099. This Court concludes that the OCCA's decision

regarding sufficiency of the evidence was not an unreasonable application of the <u>Jackson</u> standard of review. Cole is not entitled to habeas corpus relief on this issue.

### C.      Constitutionality of heinous, atrocious, or cruel aggravator  (ground eleven)

In his ground eleven claim, Cole challenges the constitutionality of the OCCA's construction of the heinous, atrocious, or cruel aggravator as failing to legitimately narrow the class of defendants eligible for the death penalty.  Dkt. # 16 at 150-54. Cole claims that, because Brianna allegedly suffered for no more than thirty seconds, her death cannot be deemed especially heinous, atrocious or cruel. Cole again points to the fact that the jury was given an older version of the jury instruction on the heinous, atrocious, or cruel aggravator.  Respondent counters that the heinous, atrocious or cruel definition has been adequately narrowed to comply with constitutional standards, and Cole's claim is without merit.

To be acceptable under the Eighth Amendment, an aggravating circumstance must furnish a sentencer with a principled means of guiding its discretion. <u>See</u> <u>Maynard v. Cartwright</u>, 486 U.S. 356, 361-64 (1988).   On direct appeal, Cole questioned the constitutionality of the heinous, atrocious, or cruel aggravating circumstance as applied in his case. The OCCA denied relief, stating: "[W]e note that this issue is raised in virtually every capital murder trial where the especially heinous, atrocious, or cruel aggravating circumstance is at issue. We have repeatedly rejected such claims, however, and see no reason to do otherwise here." <u>Cole</u>,  164 P.3d at 1098.

Because the constitutionality of aggravating factors is a question of law, Cole must demonstrate that the OCCA's decision was contrary to, or involved an unreasonable application of, federal law as established by the United States Supreme Court. <u>See</u> <u>United States v. McCullah</u>, 76 F.3d 1087, 1107 (10th Cir. 1996); <u>see also</u> 28 U.S.C. § 2254(d)(1).  He has failed to meet this

burden. The Tenth Circuit summarized its position on the constitutionality of Oklahoma's heinous, atrocious, or cruel aggravator in Workman v. Mullin, 342 F.3d 1100 (10th Cir. 2003), stating:

> We have repeatedly held that Oklahoma's current definition of "especially heinous, atrocious or cruel" aggravating circumstance is not unconstitutionally vague.
>
> Workman acknowledges that the Tenth Circuit has routinely upheld the constitutionality of this aggravating circumstance, see, e.g., Romano v. Gibson, 239 F.3d 1156, 1176 (10th Cir. 2001); Thomas v. Gibson, 218 F.3d 1213, 1226 (10th Cir. 2000); Medlock v. Ward, 200 F.3d 1314, 1319 (10th Cir. 2000); Moore v. Gibson, 195 F.3d 1152, 1175-76 (10th Cir. 1999); Smallwood v. Gibson, 191 F.3d 1257, 1274 (10th Cir. 1999); Hooks v. Ward, 184 F.3d 1206, 1239-40 (10th Cir. 1999); Foster v. Ward, 182 F.3d 1177, 1194 (10th Cir. 1999); Duvall v. Reynolds, 139 F.3d 768, 793 (10th Cir. 1998). Nevertheless, Workman attempts to find room for his argument that the aggravating circumstance is unconstitutionally vague in snippets of language from our cases such as a line from Thomas expressing doubt about blanket application of Oklahoma's early formulation and Judge Lucero's concurrence in Medlock. See generally Thomas, 218 F.3d at 1229 n.17 ("There exists, at a minimum, a serious constitutional question as to whether an aggravator which makes eligible for the death penalty all murderers who strike more than one blow adequately narrows the class of murderers eligible for the death penalty."); Medlock, 200 F.3d at 1324 ("There must be conscious suffering of more than the brief duration necessarily accompanying virtually all murders. Were this not so, the narrowing construction [that Oklahoma has given the aggravating circumstance] would not have the discretion-limiting effect  required by [the Eighth Amendment].")(Lucero, J., concurring).
>
> Oklahoma, however, has limited application of the aggravating circumstance to only those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse. Stouffer v. State, 742 P.2d 562, 563 (Okla. Crim. App. 1987). This limitation was included in the jury instructions in Workman's case. ROA Criminal Appeal, Original Record at 98, Instruction No. 3  penalty phase ("The phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse."). We have specifically found Oklahoma's new formulation to be constitutional since this limiting language was enacted. Hatch v. State, 58 F.3d 1447, 1468-69 (10th Cir. 1995); see also Duvall, 139 F.3d at 793.

Workman, 342 F.3d at 1115-16.

Tenth Circuit precedent forecloses Cole's argument that Oklahoma's heinous, atrocious, or cruel aggravator is unconstitutional. Nothing in Cole's case renders this precedent inapplicable here. As discussed in subpart A (ground nine), the failure of the OCCA to instruct the jury as to the "conscious physical suffering" requirement did not render the application of the aggravator unconstitutional. Also, as discussed in subpart B (ground ten), the OCCA's determination that there was sufficient evidence supporting the jury's finding that the murder was especially heinous, atrocious, or cruel was not unreasonable. Cole's claim that Brianna could not have suffered for more than thirty seconds is not supported by the evidence. Cole chooses to ignore the medical examiner's testimony that Brianna suffered pain not only after the abuse, but also while the injuries were inflicted. See Tr. Vol. VII at 26. The OCCA found that the infliction of the injuries "would have been protracted and not instantaneous." Cole, 164 P.3d at 1098-99. In addition, Cole points to no case law that provides a minimum time period that the victim must consciously suffer in order for the heinous, atrocious, or cruel aggravator to be constitutionally applied. In this instance, while Brianna may not have consciously suffered for an extended length of time, she clearly suffered serious physical abuse of a kind not seen in most murders that would have resulted in significant pain. Brianna was "essentially snapped in two by great force at the hands of her father." Cole, 164 P.3d at 1098. Cole's actions were certainly extremely wicked, pitiless, and vile.

Cole has not shown that the OCCA's decision was contrary to, or involved an unreasonable application of, federal law as established by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Habeas relief is denied on this issue.

**D.**      <u>Duplication between the aggravator and child abuse murder (ground twelve)</u>

Cole claims that Oklahoma's heinous, atrocious, or cruel aggravator fails to genuinely narrow the class of defendants who are eligible for imposition of the death penalty. He claims that the elements required to establish that a murder is heinous, atrocious, or cruel are identical to the elements required for a child abuse murder conviction. Therefore, Cole claims that all child abuse murder cases automatically satisfy the heinous, atrocious, or cruel aggravating circumstance making a death sentence an option. Thus, Cole argues that the aggravator does not serve to narrow the class of persons eligible for a death sentence. Dkt. # 16 at 154-55.

"To pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" <u>Lowenfield v. Phelps</u>, 484 U.S. 231, 244 (1988)(quoting <u>Zant v. Stephens</u>, 462 U.S. 862, 877 (1983)). Under Oklahoma's capital sentencing scheme, the jury is required during the sentencing phase to find at least one aggravating circumstance before it may impose a death sentence. <u>Nguyen v. Reynolds</u>, 131 F.3d 1340, 1352 (10th Cir. 1997). By doing so, the jury narrows the class of persons eligible for the death penalty according to an objective legislative definition. <u>Lowenfield</u>, 484 U.S. at 244 (citation omitted). Cole raised this issue on direct appeal and the OCCA rejected it on the merits, relying on its holding in <u>Malicoat v. State</u>, 992 P.2d 383, 399-400 (Okla. Crim. App. 2000). <u>Cole</u>, 164 P.3d at 1099-1100.

This issue is foreclosed by Tenth Circuit precedent. In <u>Revilla v. Gibson</u>, 283 F.3d 1203 (10th Cir. 2002), the defendant also argued that the heinous, atrocious, or cruel aggravator duplicated the elements of child abuse murder under Oklahoma law and did not narrow the class of

offenders subject to the death penalty. <u>Id.</u> at 1214. The Tenth Circuit upheld the district court's finding that the elements of child abuse murder and the elements necessary to establish the aggravator are not duplicative. <u>Id.</u> at 1214-15. The <u>Revilla</u> court explained:

> First, regarding the nature of the defendant's actions, the aggravator requires conduct that is "extremely wicked," "shockingly evil," "outrageously wicked and vile," "pitiless," "designed to inflict a high degree of pain" or involves "indifference to, or enjoyment of, the suffering of others." <u>Alverson v. State</u>, 983 P.2d 498, 516 (quotation omitted). Nothing in the offense replicates these extreme formulations. Second, regarding the violence done to the victim, the aggravator requires "torture" or "serious physical abuse" resulting in "conscious physical suffering." <u>Id.</u> at 515-16. The offense requires only "unreasonable force" or an "act which caused injury," provided death results. <u>Fairchild v. State</u>, 998 P.2d 611, 622 (Okla.Crim.App.1999). Revilla's assertion that, because the abuse required for the offense must be fatal, it must as a practical matter satisfy the aggravator, is meritless. The victim's death, which for the offense need not be intended, does not necessarily establish the requisite callousness of the defendant or suffering of the victim. <u>See</u> <u>Malicoat v. State</u>, 992 P.2d 383, 399-400 (Okla.Crim.App.2000) (rejecting similar claim of duplication between child abuse murder and heinous, atrocious, or cruel aggravator).

<u>Id.</u>

Additionally, the Tenth Circuit went further and recognized that, although <u>Lowenfield</u>, 484 U.S. at 244, requires the states to "genuinely narrow the class of persons eligible for the death penalty," it also clarified that the narrowing requirement can be met during guilt stage proceedings by legislatively defined capital offenses or during sentencing stage proceedings by the finding of aggravating circumstances. <u>Revilla</u>, 283 F.3d at 1215. As such, if the narrowing function is performed in the guilt phase, the mere fact that such function is also duplicated in the sentencing phase does not invalidate the capital sentence. <u>Id.</u> Thus, the Tenth Circuit has found "if an offense element adequately performs the necessary narrowing function, the Eighth Amendment is satisfied and it is immaterial whether that element happens to be duplicated by a specified aggravator." <u>Id.</u> (citing <u>United States v. Chanthadara</u>, 230 F.3d 1237, 1261 (10th Cir. 2000); <u>United States v.</u>

McCullah, 76 F.3d 1087, 1109 (10th Cir.1996)). The Revilla court explained, "Thus, the very premise of Revilla's duplication argument-that child abuse murder is so reprehensible that it effectively entails the material requirements of the heinous, atrocious, or cruel aggravator-logically forecloses his conclusion that the constitutional narrowing function was not properly effectuated in his case." Id. at 1215. Likewise, Cole's argument, which is identical to that raised in Revilla, fails for the same reasons.

Cole has failed to demonstrate that the OCCA's decision is contrary to, or an unreasonable application of, Supreme Court law. See 28 U.S.C. § 2254(d)(1). Cole is denied relief on his ground twelve claim.

## X.    Second stage instructional error (ground thirteen)

In ground thirteen, Cole contends the following second stage instruction was unconstitutional because it did not expressly state that the jury must find that aggravating factors outweigh mitigating factors beyond a reasonable doubt:

> If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, the death penalty shall not be imposed unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances. Even if you find that the aggravating circumstance(s) outweigh(s) the mitigating circumstance(s), you may impose a sentence of imprisonment for life or imprisonment for life without parole.

See O.R. Vol. III at 471, Instruction No. 14. Cole argues that the question of whether aggravating circumstances outweigh mitigating circumstances implicates a factual finding that must be made by the jury beyond a reasonable doubt pursuant to Jones v. United States, 526 U.S. 227 (1999), Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 536 U.S. 227 (2002). Cole

presented this claim to the OCCA on direct appeal. The OCCA summarily denied the claim on the merits. Cole, 164 P.3d at 1100.

Cole's ground thirteen claim is foreclosed by established Tenth Circuit precedent, Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009). The petitioner in Matthews raised the same issue that Cole raises here. In rejecting the claim, the circuit court found:

> Mr. Matthews complains about the trial court's penalty stage jury instructions. To impose a sentence of death, under its instructions, the jury was required to find the existence of any aggravating circumstance beyond a reasonable doubt and that the aggravating circumstances outweighed mitigating circumstances. Mr. Matthews contends it should also have been instructed that it had to find beyond a reasonable doubt that aggravating factors outweighed the mitigating. The failure to include an instruction on this last point, Mr. Matthews contends, violated his Sixth Amendment rights. In his view, the question whether aggravating circumstances outweigh mitigating circumstances implicates a factual finding that increases the maximum penalty for his crime, and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 588, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), require that juries make such factual findings beyond a reasonable doubt. FN9

> > FN9. The trial court instructed the jury as follows: "If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, the death penalty shall not be imposed unless you find that any such aggravating circumstances outweigh the finding of one or more mitigating circumstances. Even if you find that the aggravating circumstances outweigh the mitigating circumstances, you may impose a sentence of imprisonment for life with the possibility of parole or imprisonment for life without the possibility of parole." State Court Record at 2387.

> . . . .

> . . . Mr. Matthews's Apprendi argument is certainly barred on the merits by dint of our decision in United States v. Barrett, 496 F.3d 1079, 1107 (10th Cir. 2007). There, we explained that the jury's determination that aggravating factors outweigh mitigating factors is not a finding of fact subject to Apprendi but a "highly subjective, largely moral judgment regarding the punishment that a particular person deserves." Id. at 1107 (citing Caldwell v. Mississippi, 472 U.S. 320, 340 n.7, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)). We are of course bound by this decision as the law of the circuit . . . .

89

Matthews, 577 F.3d at 1195. For the same reasons explained in Matthews, Cole is not entitled to habeas relief on his ground thirteen claim.

**XI.    Accumulation of errors (ground fourteen)**

Cole next contends he was denied a fair trial and a reliable sentencing process because of the impact of the accumulation of errors. Dkt. # 16 at 163-65. Cole exhausted this claim by asserting cumulative error on direct appeal. The OCCA denied relief finding that the errors it identified, even viewed in a cumulative fashion, did not require relief. Cole, 164 P.3d at 1101. Likewise, when this claim was raised in Cole's post-conviction, the OCCA found no errors and denied the claim as without merit. Order Denying Application for Post-Conviction Relief at 8, PCD-2005-23.

Cumulative error analysis "merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Hamilton v. Mullin, 436 F.3d 1181, 1196 (10th Cir. 2006)(quoting Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003)). This Court has reviewed the identified trial errors together to determine if the accumulation rendered Cole's trial unfair. The Court cannot find under the facts of this case that the cumulative effect of the errors had a "substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 551 U.S. 112, 121 (2007); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). The Court finds Cole has shown no cumulative error warranting a new trial.

## CERTIFICATE OF APPEALABILITY

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Court recognizes that "review of a death sentence is among the most serious examinations any court of law ever undertakes." Brecheen v. Reynolds. 41 F.3d 1343, 1370 (10th Cir. 1994). To be granted a certificate of appealability, however, Cole must demonstrate a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists of reason or that the questions deserve further proceedings. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). "Obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor." Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (citations omitted).

The Court reviewed each of Cole's propositions of error, and found none of the claims merited or warranted habeas relief. However, the Court recognizes that some of Cole's stated issues relate to the alleged deprivation of one of his constitutional rights, which, if substantiated, could entitle him to habeas relief. In order to ensure that these issues receive the type of review on appeal which should be accorded such serious matters, the Court has carefully considered each issue and finds that the following enumerated issues could be debated among jurists or could be resolved differently by another court:

> Ground two: complete breakdown in communication;
>
> Ground four: ineffective assistance of counsel;
>
> Ground seven: admission of gruesome autopsy photographs;
>
> Ground eight: prosecutorial misconduct; and

Ground ten: insufficient evidence for heinous, atrocious, or cruel aggravator.

Additionally, this Court finds that these same issues are adequate to deserve encouragement to proceed further. See Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot, 463 U.S. at 893).

**ACCORDINGLY IT IS HEREBY ORDERED** that:

1.     The petition for writ of habeas corpus (Dkt. # 16) is **denied**.

2.     The preliminary request for tolling and abeyance, contained within the petition for writ of habeas corpus (Dkt. # 16), is denied.

3.     A certificate of appealability is granted as to the claims enumerated herein.

4.     A separate judgment shall be entered in this matter.

**DATED** this 1st day of September, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT